EDWARD W. MURRAY, DIRECTOR, DEPARTMENT OF
CORRECTIONS, COMMONWEALTH OF VIRGINIA

v.

ANGUS McDONALD GREEN, ET AL.

Record No. 891488

September 21, 1990

Present: All the Justices

*Jeanette D. Rogers, Assistant Attorney General (Mary Sue Terry, Attorney General,* on briefs), for appellant.
*C. Ridgeway Schuyler, III (Rae H. Ely,* on brief), for appellees.

JUSTICE STEPHENSON delivered the opinion of the Court.

The dispositive issue in this appeal is whether the substantive content of an environmental impact report made pursuant to the Environmental Quality Act, Code §§ 10.1-1200 to -1221 (the Act), is subject to judicial review.

Code § 10.1-1208 requires all state agencies, boards, commissions, or any branch of the state government to "prepare and submit a report to the Council [on the Environment] on each major state project." The report shall include the following:

1. The environmental impact of the major state project;
2. Any adverse environmental effects which cannot be avoided if the major state project is undertaken;
3. Measures proposed to minimize the impact of the major state project;
4. Any alternatives to the proposed construction; and
5. Any irreversible environmental changes which would be involved in the major state project.

Code § 10.1-1208.

Within 60 days of the receipt of the report by the Council on the Environment (the Council), the Council shall "review and make a statement to the Governor commenting on the environ-

mental impact of each major state facility." Code § 10.1-1209. This statement shall be available to the General Assembly and to the general public. *Id.* Thereafter, the statement must be submitted to the Governor who may approve or disapprove the project, "after his consideration of the comments of the Council on the environmental impact of the facility." Code § 10.1-1210.

On April 24, 1989, Angus McDonald Green and others[1] (collectively, Green) filed a "Motion for Temporary Injunctive Relief," pursuant to Code § 8.01-620, to enjoin Edward W. Murray, Director, Department of Corrections (DOC), from expanding Culpeper Correctional Unit No. 11 from approximately 70 prisoner beds to approximately 270 prisoner beds.[2] Green lives in "Greenwood," a state and nationally registered historic landmark located adjacent to the Correctional Unit.

Green alleged, *inter alia*, that the DOC had failed to submit a complete environmental impact report to the Council in violation of the Act. On April 27, 1989, the trial court enjoined the DOC from constructing the expanded facility for 30 days to allow the DOC to prepare a complete environmental impact report, to submit the report to the Council, and to obtain reapproval of the project by the Governor.

Thereafter, the DOC prepared a new environmental impact report (the new report) and, on May 3, 1989, submitted it to the Council. The Council then reviewed the new report and submitted its comments on the environmental impact of the proposed facility to the Governor, as required by Code § 10.1-1209. The Governor considered the new report and the Council's comments and, on June 9, 1989, approved the expansion project.

On June 12, 1989, Green moved to renew the injunction, and, by decree entered September 27, 1989, the trial court again enjoined the project, finding that the DOC had failed to comply with the provisions of the Act. We granted the DOC an appeal from that decree.

The DOC contends that the trial court was not empowered to review the substantive content of the new report. The DOC asserts that, "[w]hether addressed in terms of standing, right of action, or

---

[1] The other plaintiffs are: Ada Newton Green, Sharon R. Carter, Richard S. Carter, Ruth Butler, Harvey Butler, Ethel Bache, Theresa D. Carter, Lenora S. Arnold, Harold B. Arnold, Mary J. Early, Richard C. Early, Sam Crockett, and Lucy Crockett.

[2] The proposed expansion of Culpeper Correctional Unit No. 11 is a "major state project." A "major state project" is one that "costs $100,000 or more." Code § 10.1-1200.

right to judicial review," the trial court was without authority to enter the second injunction decree.[3]

Green, on the other hand, contends that "[o]fficials refusing to comply with ministerial duties which are prerequisites to governmental action . . . may be enjoined from undertaking that action until those ministerial tasks are accomplished." Similarly, Green also contends that a court is empowered to enjoin illegal acts of an official which are attempted under color of his office.

Pursuant to the statutory scheme, the environmental impact report is prepared by a state agency and then submitted to the Council for its review. The Council evaluates the report and forwards it to the Governor with the Council's comments. Payment of funds for the project shall not be authorized by the State Comptroller unless the project is approved by the Governor after his consideration of the Council's comments on the report. Code § 10.1-1210. The Act, however, does not provide for judicial review of environmental impact reports.

The General Assembly could have provided for judicial review in enacting the Act. Indeed, in enacting other Chapters in Title 10.1, the General Assembly did expressly provide for judicial or administrative review. See e.g., Code § 10.1-1317 (judicial review of Air Pollution Control Board regulations); Code § 10.1-603.13 (aggrieved party may seek judicial review of stormwater management plan); Code § 10.1-613 (Soil and Water Conservation Board may sue for noncompliance with Dam Safety Act); Code § 10.1-1013 (standing to bring action affecting conservation easement); and Code § 10.1-1457 (aggrieved person is entitled to judicial review of Waste Management Board decisions).

These express identifications of circumstances in which judicial review is available in Title 10.1 lead to the conclusion that the General Assembly intended to preclude judicial review of the environmental impact report prepared, and conclusions reached, pursuant to Code §§ 10.1-1208, -1209, and -1210. See Murray v. Stokes, 237 Va. 653, 657, 378 S.E.2d 834, 836 (1989). These statutory distinctions make apparent that the General Assembly intended to limit the review of the report to the Executive Branch. We hold, therefore, that the Act does not authorize a judicial review of the substantive content of an environmental impact report.

---

[3] The DOC concedes that it "had not completed all of the requisite steps under §§ 10.1-1208 thru 1210" before it began construction. Thus, the DOC "does not dispute that the first injunction was properly granted."

 In the present case, the DOC commenced the project before it had complied with the Act's *procedural* requirements. Because the DOC had not performed the ministerial duties provided by the Act, its actions were illegal, and the first injunction was proper. The record shows, however, that following the first injunction, the DOC issued the new report in compliance with the Act's procedural requirements, and the Governor thereafter approved the project. Thus, because the Act did not empower the trial court to review the substantive content of the new report, the trial court erred in entering the second injunction.

Accordingly, the trial court's judgment will be reversed, the injunction will be vacated, and final judgment will be entered in favor of the DOC.

*Reversed and final judgment.*