Present:  All the Justices

HARRISON & BATES, INC.

OPINION BY JUSTICE LAWRENCE L. KOONTZ, JR.
v. Record No. 961318                    APRIL 18, 1997

FEATHERSTONE ASSOCIATES LIMITED
 PARTNERSHIP, ET AL.

FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Herbert C. Gill, Judge

In this appeal, we consider whether the Commercial Real Estate Broker's Lien Act, Code §§ 55-526 and 55-527 (the Broker's Lien Act), permits a commercial real estate broker to record and enforce a lien against rents on property after the property has been transferred to a subsequent purchaser.

BACKGROUND

The parties stipulated the facts in the trial court.  We summarize the chronology of events and commercial transactions that form the framework of the parties' differing assertions on appeal.  In 1988, Featherstone Associates (Featherstone/Virginia), a Virginia general partnership, owned Featherstone Professional Center (the property), a commercial office complex in Chesterfield County.  To obtain tenants for the property, Featherstone/Virginia entered into a written commission agreement with Bowers, Nelms & Fonville, Inc. (Bowers), a licensed commercial real estate broker.  Under this agreement Bowers' brokerage fee was to be 4% of the rents paid over the term, including any renewal period, of leases procured by Bowers.

Harrison & Bates, Inc. (Harrison), a licensed commercial real estate broker, is the assignee of the agreement between Bowers and Featherstone/Virginia.  Principal Commercial Advisors,

Inc. (Principal), a subsidiary of the Principal Financial Group, is the successor of the original mortgage lender to Featherstone/Virginia on the property. Featherstone Associates Limited Partnership (Featherstone/New Mexico) is a New Mexico limited partnership and is unrelated to Featherstone/Virginia.

| | |
|---|---|
| April 16, 1987 | Featherstone/Virginia executes first Deed of Trust, Assignment of Leases and Security Agreement on the property in favor of Signet Bank. |
| June 1, 1988 | Featherstone/Virginia and Bowers execute commission agreement. |
| October 11, 1988 | Featherstone/Virginia executes second Deed of Trust and Assignment of Rents and Leases on the property in favor of Signet Bank. |
| May 4, 1989 | Bowers procures lease on a portion of the property with John Tyler Community College; Featherstone/Virginia begins paying commissions to Bowers on rents received under this lease. |
| August 4, 1989 | Bowers procures lease on a portion of the property with Dr. Jonas B. Speigel; Featherstone/Virginia begins paying commissions to Bowers on rents received under this lease. |
| June 28, 1993 | Signet Bank transfers interest in first and second Deeds of Trust and Assignments of Rents and Leases on the property to Principal. |
| January 14, 1994 | Featherstone/Virginia agrees to transfer ownership of the property to Principal in lieu of foreclosure; deed placed in escrow with Signet Bank; Signet Bank continues paying commissions to Harrison as Bowers' successor-in-interest. |
| May 2, 1994 | Deed released from escrow and recorded; last commission payment is made to Harrison by agent of Principal. |
| July 22, 1994 | Principal informs Harrison that it will not continue commission payments. |

| | |
|---|---|
| January 24, 1995 | Harrison files memorandum of commercial real estate broker's lien. |
| May 5, 1995 | Principal deeds ownership of the property to Featherstone/New Mexico; Featherstone/New Mexico executes Deed of Trust and Assignment of Rents in favor of Principal. |
| June 12, 1995 | Harrison requests unsuccessfully that tenants pay rent directly to Harrison under the lien. |
| July 31, 1995 | Harrison files bill of complaint to enforce lien, naming as respondents Featherstone/New Mexico, Principal, the trustees under Featherstone/New Mexico's Deed of Trust in favor of Principal, and the two tenants. |

In a letter opinion subsequently incorporated by reference in the final decree, the trial court initially determined that the language of the Broker's Lien Act is ambiguous with regard to when a broker's lien is created, and is, therefore, subject to judicial construction. The trial court then determined that the purpose of the Broker's Lien Act was to provide commercial real estate brokers with a lien to secure contractual obligations of the property owner without having to bargain for that right. The trial court further reasoned, with reference to the Virginia Recording Act, Code § 55-95, that recording requirements within the Broker's Lien Act were intended to provide purchasers and encumbrancers with notice of the existence of the lien. On that basis, the trial court concluded that "perfection of a lien subsequent to the transfer of property would be contrary to the clear legislative purpose behind" the Broker's Lien Act. Accordingly, the trial court found that the present lien is not enforceable. We awarded Harrison this appeal.

DISCUSSION

We first consider Harrison's assertion that the Broker's Lien Act is not ambiguous and, thus, should be applied according to the plain meaning and intent of its language.  It is well established that "[t]he province of [statutory] construction lies wholly within the domain of ambiguity."  Winston v. City of Richmond, 196 Va. 403, 408, 83 S.E.2d 728, 731 (1954).  When a statute is plain and unambiguous, a court may look only to the words of the statute to determine its meaning.  Brown v. Lukhard, 229 Va. 316, 321, 330 S.E.2d 84, 87 (1985).

The Broker's Lien Act consists of two code sections, the first of which defines the terms "commercial real estate" and "principal broker."  Code § 55-526.  The dispositive portions of the Broker's Lien Act are contained in Code § 55-527, which has two subparts.  At the time Harrison filed its lien, Code § 55-527 read, in pertinent part:

> A.  Any principal broker who . . . has provided licensed services that result in the procuring of a tenant of commercial real estate upon the terms provided for in a written agreement signed by the owner thereof . . . shall have a lien, in the amount of the compensation agreed upon by and between the principal broker and the owner, upon rent paid by the tenant of the commercial real estate, or by the successors or assigns of such tenant. . . .

> B.  The lien provided by this chapter shall not attach or be perfected until a memorandum of such lien signed under oath by the broker and meeting the requirements of this subsection has been recorded in the clerk's office of the circuit court of the county or city where the commercial real estate is located. The memorandum of lien shall state the name of the claimant, the name of the owner of the commercial real estate, a description of the commercial real estate, the name and address of the person against whom the broker's claim for compensation is made, the name and address of the tenant paying the rent against which the lien is being claimed, the amount for which the lien is being claimed, and the real estate license number of

>the principal broker claiming the lien.  The lien
>provided by this chapter and the right to rents secured
>by such lien shall be subordinate to all liens, deeds
>of trust, mortgages or assignments of the leases, rents
>or profits recorded prior to the time the memorandum of
>lien is recorded.

(Emphasis added.)

Nothing in the language of this statute is inherently difficult to comprehend, of doubtful import, or lacking in clarity and definiteness.  Accordingly, it is not necessary to look beyond the plain language of the statute to ascertain its underlying legislative intent.  See Brown, 229 Va. at 321, 330 S.E.2d at 87.

While we agree with Harrison that the trial court erred in ruling that Code § 55-527 was ambiguous and required judicial construction, reversal of the judgment is not required.  "We do not hesitate, in a proper case, where the correct conclusion has been reached but the wrong reason given, to sustain the result and assign the right ground."  Robbins v. Grimes, 211 Va. 97, 100, 175 S.E.2d 246, 248 (1970); see also First Security Federal Savings Bank, Inc. v. McQuilken, 253 Va. 110, 114, 480 S.E.2d 485, 488 (1997); RF&P Railroad v. Metro. Wash. Airports Auth. 251 Va. 201, 214, 468 S.E.2d 90, 98 (1996).  As we shall demonstrate, this is such a case.

Relying on the plain language of the statute, Harrison asserts that an inchoate lien arises under § 55-527(A) upon the broker rendering service under an agreement with the property owner, and this lien can be perfected at any time thereafter by complying with the recording requirements of § 55-527(B).

Harrison misinterprets the nature of the lien provided by the statute.

In general terms, an inchoate lien is one which attaches to property by operation of a statute or entry of a judgment, but which cannot be enforced until it becomes a consummate lien by the appropriate statutory or judicial process.  When an inchoate lien becomes consummate, the priority of its enforcement relates back to the date the lien was created.  See Black's Law Dictionary 762 (6th ed. 1990).

For example, Virginia's Mechanics' Lien Act provides for the creation of a lien on property, Code § 43-3, which can then be perfected by filing a memorandum within 90 days of the last day of the month in which work was performed on, or material provided to, the property.  Code § 43-4.  In Hadrup v. Sale, 201 Va. 421, 425, 111 S.E.2d 405, 407 (1959), we held that these statutes, "when fairly construed, [mean] that an inchoate lien attaches when the work is done and materials furnished which may be perfected within the specified time."

In Hadrup, however, we distinguished liens which come into existence only upon their being timely recorded, under a particular statutory scheme, from inchoate liens created by statute and merely subject to perfection by recording:

> Under statutes which provide that the claimant shall, upon giving or filing notice, have a lien upon the property, a sale of it in good faith before the notice of lien is given or filed prevents the acquisition of any lien.  On the other hand, under statutes which recognize the right to a lien from the date of the contract or the time of the commencement of the building or other improvement, or from the beginning of the performance of the labor or the furnishing of material for which the lien is claimed, a lien which

has thus attached is not affected by a change of ownership . . . .

Id. at 423-24, 111 S.E.2d at 407.

The lien available to commercial real estate brokers under the Broker's Lien Act falls into the former category. Unlike an inchoate lien, the lien provided for by the Broker's Lien Act "shall not attach or be perfected until . . . recorded." In other words, Harrison's assertion that § 55-527(A) results in the attachment of an inchoate lien, thereafter subject to perfection by recording under the provisions of § 55-527(B), is expressly contradicted by the plain language of the statute. Accordingly, we hold that the lien available to a commercial real estate broker pursuant to the Broker's Lien Act comes into existence, if at all, only when the required recording occurs.

Harrison further asserts that the requirement of § 55-527(B) that the memorandum of lien state both "the name of the owner of the commercial real estate . . . [and] the name and address of the person against whom the broker's claim for compensation is made" manifests a legislative intent to permit a lien on the rents to be perfected after transfer of the property and enforced against the new owner. We disagree.

The Broker's Lien Act was created in derogation of the common law. See S.L. Nusbaum & Co. v. Atlantic Virginia Realty Corp., 206 Va. 673, 146 S.E.2d 205 (1966); Hoffman v. First National Bank of Boston, 205 Va. 232, 135 S.E.2d 818 (1964). Accordingly, any right it provides not previously available at common law must be found in an express statement within the

language of the Act. See Hyman v. Glover, 232 Va. 140, 143, 348 S.E.2d 269, 271 (1986); C. & O. Railway v. Kinzer, 206 Va. 175, 181, 142 S.E.2d 514, 518 (1965). The language relied upon by Harrison is not so broad as to encompass the extraordinary right of a broker to obtain priority over a subsequent purchaser of the property. Rather, this language merely recognizes that there may be circumstances under which the party with the right to collect rents, and, thus against whom the lien may be enforced, may not be the party who owns the property at the time the lien is recorded.

Finally, we find no merit to Harrison's contention that its asserted lien attached to the rents in question because both Principal and Featherstone/New Mexico had actual or constructive knowledge of Harrison's claim prior to their acquisition of the property. The two cases relied upon by Harrison, Ely v. Johnson, 114 Va. 31, 75 S.E. 748 (1912)(purchaser on notice as to possession and use of land by another) and Hunton v. Wood, 101 Va. 54, 43 S.E. 186 (1903)(improperly recorded deed of trust), each dealt with subsequent purchasers of land with prior notice of an existing, but unrecorded, interest in the property acquired. However, at the time Principal acquired the property, Harrison did not have an existing, but unrecorded, interest in the property. Rather, its interest constituted a potential lien upon the rents which could come into existence only upon the recording of a memorandum of that lien prior to a transfer of the property. Prior to that, Harrison had nothing more than a contract obligation enforceable against Featherstone/Virginia.

Consequently, because the memorandum of lien was not recorded until after the transfer of the property, Harrison did not acquire a lien that attached to the subsequent purchaser's interest in the property.

In summary, when Featherstone/Virginia, the party with which Harrison was in privity on the commission contract, transferred its interest in the rents along with its other property rights to Principal, Harrison lost any power it had to seek enforcement of the contract obligation by lien since Featherstone/Virginia no longer possessed the property right potentially subject to such a lien.  Thus, Harrison's subsequent recording of the memorandum of lien was ineffective against Principal, and any notice which that memorandum provided to Featherstone/New Mexico was equally ineffective.

For these reasons, we will affirm the judgment of the trial court.

<u>Affirmed</u>.