Present: All the Justices

TOWN OF BLACKSTONE

OPINION BY
v.  Record No. 980564      JUSTICE LAWRENCE L. KOONTZ, JR.
November 6, 1998
SOUTHSIDE ELECTRIC COOPERATIVE, ET AL.

FROM THE STATE CORPORATION COMMISSION

In this appeal, the primary issue we consider is whether a municipality seeking to acquire, by condemnation, electric utility distribution facilities within an annexed area under Code § 56-265.4:2 must first obtain the approval of the State Corporation Commission (Commission) under Code § 25-233.

BACKGROUND

The Town of Blackstone (the Town) is a municipality in Nottoway County that owns and operates an electric utility system for the distribution and retail sale of electricity both within and beyond its corporate boundaries.  Southside Electric Cooperative (Southside) is a Virginia electric distribution cooperative that provides retail electric service within an area that encompasses eighteen counties and five municipalities, including portions of Nottoway County.

In 1992, pursuant to an agreement with Nottoway County, the Town annexed a 2.5 square mile area of Nottoway County (the annexed area).  Although the Town at that time provided electric service to customers in a portion of the annexed area, Southside, pursuant to a certificate issued by the Commission,

provided electric service to customers in other portions of the annexed area as well as to customers in a subdivision of the Town known as Pickett Court.  Virginia Electric and Power Company (Virginia Power) also provided electric service in the Town, serving three customers outside the annexed area.

In order to extend its electric service to all customers located within the annexed area, the Town engaged in discussions with Southside in attempts to acquire Southside's electric distribution facilities and associated rights of way (the facilities) within that area.  After these discussions failed to achieve that goal, on June 25, 1996, the Town Council passed a resolution authorizing a condemnation proceeding, pursuant to Code § 56-265.4:2, to acquire the facilities.  On June 28, 1996, the Town filed an application with the Commission requesting permission to acquire the facilities by a condemnation proceeding.[1]

In its application, consistent with the requirements of Code § 25-233, the Town asserted that a "public necessity" or an

---

[1]In its application, the Town recognized that the Commission had previously ruled, in a divided opinion, that a municipality seeking to condemn facilities under Code § 56-265.4:2 was required to obtain Commission permission under Code § 25-233. See Petition of City of Franklin, Case No. PUE890069, 1990 S.C.C. Ann. Rep. 301, 302.  However, the Town did not concede the issue, and the Commission, therefore, expressly addressed it.

"essential public convenience" required its acquisition of Southside's facilities and that these facilities were not essential to the purposes of Southside. In support of those assertions, the Town maintained that condemnation would: (1) end the fragmented service that results from having more than one electric provider in the area; (2) reduce rates for electric service; (3) improve the reliability of electric service in the annexed area; (4) allow more prompt service connections to customers in the annexed area; (5) give customers in the annexed area a greater voice in decisions regarding their electric rates and service; and (6) have no effect on Southside's remaining customers. Southside challenged these claims in its answer opposing the Town's application.

The Commission appointed a hearing examiner to consider the application, and hearings were held in December 1996. On August 21, 1997, the hearing examiner issued his report. In that report, the hearing examiner rejected the Town's assertion that Code § 56-265.4:2 does not require the Town to obtain the Commission's permission under Code § 25-233 prior to proceeding with condemnation of Southside's facilities in the annexed area. In addition, the hearing examiner rejected the Town's further assertion that under the circumstances of this case the Commission must apply a less stringent standard for determining whether a public necessity or an essential public convenience

3

supports the Town's application.  With respect to the merits of the application, the hearing examiner addressed each of the assertions made by the Town in support of its application and found that none of these demonstrated a "public necessity" or "essential public convenience" warranting condemnation.  For purposes of our resolution of the issues presented in this appeal, we need not relate the facts supporting these findings, which are adequately supported by the record.[2]

The Town filed exceptions to the hearing examiner's report. Thereafter, the Commission reviewed the report and adopted the findings and recommendations of the hearing examiner in an order dated November 24, 1997, denying the Town's application.  This appeal followed.

## DISCUSSION

On appeal, the Town asserts that the Commission erred in finding that it was required to obtain the Commission's permission under Code § 25-233 prior to exercising its right

---

[2]The hearing examiner also addressed the issue of whether the facilities are essential to Southside, as required by Code § 25-233.  Noting that the Commission has construed "essential" to mean "only when the acquisition would adversely affect service to [the relinquishing] utility's remaining customers," the hearing examiner concluded that the facilities are not essential to Southside's purposes.  The Commission subsequently determined that it need not reach this issue since the Town had failed to establish that condemnation was appropriate.  The Town does not assign error to this determination, and accordingly, we express no opinion on this issue.

under Code § 56-265.4:2 to acquire, by condemnation, Southside's facilities in the annexed area.  The Town further asserts that even if it was required to obtain the Commission's permission prior to exercising its right under Code § 56-265.4:2, the Commission applied an erroneous legal standard in determining whether the requirements of Code § 25-233 were met, by requiring the Town to establish a "public necessity" or an "essential public convenience" under the traditional standard, instead of some "less stringent" standard.

Both issues raised by the Town are essentially matters of statutory construction.  Code § 56-265.4:2, in relevant part provides:

> A. Any city or town in the Commonwealth which provides electric utility service for the use of its residents may, at any time following annexation of additional territory to such city or town, acquire the distribution system facilities of the electric utility serving the annexed area <u>in the manner provided by Title 25</u>.

(Emphasis added.)

At all times relevant to this appeal, Code § 25-233, provided in part:

> No corporation or authority created under the provisions of Chapter 39 (§ 15.1-1603 <u>et seq.</u>) of Title 15.1 shall take by condemnation proceedings any property belonging to any other corporation possessing the power of eminent domain, unless, after hearing all parties in interest, <u>the State Corporation Commission shall certify that a public necessity or that an essential public convenience shall so require, and shall give its permission thereto</u>; and in no event shall one corporation take by condemnation proceedings

5

> any property owned by and essential to the purposes of another corporation possessing the power of eminent domain.

(Emphasis added.)

The Town contends that a proper construction of Code § 56-265.4:2 would exclude such condemnation actions from the review of the Commission under Code § 25-233 by limiting the phrase "in the manner provided by Title 25" to mean that a city or town need only employ the procedures of the Virginia General Condemnation Act, Code § 25-46.1 et seq. In short, the Town contends that Code § 56-265.4:2 was enacted to permit a city or town to do the very thing prohibited by Code § 25-233, that is to condemn the property of a public utility with the power of eminent domain without first seeking permission from the Commission. In making this contention, the Town does not expressly state that Code § 56-265.4:2 is ambiguous, but supports its argument with extensive reference to external aids to construction, raising the obvious implication that the statute cannot be construed from its plain language.[3] We disagree.

---

[3]The Town further contends that Code § 56-265.4:2 must be read to provide more expansive powers of condemnation than are provided elsewhere in the Code, otherwise its enactment would merely be redundant of other statutes. However, as the Town itself notes, Code § 56-265.4:2 was enacted following this Court's decision in Town of Culpeper v. VEPCO, 215 Va. 189, 207 S.E.2d 864 (1974), in order to provide the express right of

6

When considering a legislative act, a court may look only to the words of the statute to determine its meaning, and when the meaning is plain, resort to rules of construction, legislative history, and extrinsic evidence is impermissible. Harrison & Bates, Inc. v. Featherstone Assoc., 253 Va. 364, 368, 484 S.E.2d 883, 885 (1997). Accordingly, unless we find that any words of the statute are "inherently difficult to comprehend, of doubtful import, or lacking in clarity and definiteness . . . it is not necessary to look beyond the plain language of the statute to ascertain its underlying legislative intent." Id. at 369, 484 S.E.2d at 886.

Utilizing this standard, we find no merit to the Town's contention that the phrase "in the manner provided by Title 25" can be reasonably read to have a limited construction. Nothing in that phrase suggests that the legislature intended other than what the plain language imports, which is that the right afforded to cities and towns seeking to acquire by condemnation the electric utility distribution facilities within newly annexed areas is subject to all the provisions of Title 25 relevant to such actions. No resort to external aids to construction is necessary to reach that self-evident conclusion.

condemnation in annexed areas which we had found lacking elsewhere in the Code. Accordingly, the purpose of this statute

7

Accordingly, we hold that a city or town seeking to exercise the right provided by Code § 56-265.4:2 must comply with Code § 25-233, which provides that permission must first be obtained from the Commission by any public corporation or authority seeking to take by condemnation proceedings the property of any other entity also possessing that power. To do so, the city or town must demonstrate "that a public necessity or that an essential public convenience shall so require." Code § 25-233.

The Town contends, however, that unless a "less stringent" standard is applied by the Commission in its determinations under Code § 25-233, Code § 56-265.4:2 is rendered meaningless. This is so, the Town asserts, because "it is highly unlikely that a municipality can ever demonstrate that a regulated public utility is failing to provide adequate service at reasonable rates" and, thus, no municipality could ever demonstrate that the condemnation of electric utility distribution facilities is a public necessity or essential to public convenience.

The Town's contention on this issue rests on a faulty premise. Nothing in the record before us suggests that the Commission limited its consideration of the Town's application solely to the question of adequacy of service and reasonableness

is clearly not redundant of the existing scheme for condemnation

of rates, or that it would so limit itself in the future. Rather, the Commission focused its inquiry on whether the public would benefit under the entire circumstances of the proposed condemnation, and noted that while there would be certain benefits, including a slight reduction of rates, the evidence on balance did not support such a finding. The record adequately supports that finding. Moreover, we reject the Town's contention that no municipality would be able to effectively compete with a public utility in the provision of or cost of service.

In sum, we hold that all of the provisions of Code § 25-233 as traditionally applied by the Commission apply to the condemnation of electric utility distribution facilities under Code § 56-265.4:2 by a city or town. The decision of the Commission, as an expert tribunal, is presumed to be just, reasonable, and correct unless without support in the record or manifestly in error. Central Telephone Co. of Virginia v. State Corporation Commission, 219 Va. 863, 874, 252 S.E.2d 575, 581-82 (1979). Here, the record supports the decision of the Commission and the Commission correctly applied the law. For these reasons, the order of the Commission will be affirmed.

Affirmed.

---

of electric distribution facilities.