## CIRCUIT COURT OF THE CITY OF SALEM

Betty Ellen Wilson et al.

v.

City of Salem

November 22, 1999

Case No. CH99-154

BY JUDGE CLIFFORD R. WECKSTEIN

This is a suit to enjoin the City of Salem from erecting a "2.5 million gallon, multi-million dollar water storage tank towering some 130 feet in height, which it has identified as the 'Kime Lane Water Main and Elevated Tank' " (Amended Bill of Complaint, 12) on property that it owns, which is a portion of a tract known as the "Elizabeth Campus." The evidence demonstrates that, weather permitting, on Tuesday, November 23, unless the City is enjoined from proceeding, large amounts of concrete will be "placed" (*i.e.,* poured) for the project, forever altering the character of the Elizabeth Campus. The evidence also shows that, if the court enjoins construction, and it thereafter is allowed to resume, the delay will cost the City hundreds of thousands of dollars. A thirty-day delay in construction will cost an estimated $187,500. A delay at this time might make continuation of the job a practical impossibility until after winter's end. The cost of a ninety-day delay is estimated at $299,840.

The plaintiffs, who are tax-paying residents of the City of Salem, say that both preliminary and permanent injunctions should issue because the proposed construction is illegal. The property upon which the City plans to erect the water tower is zoned Residential R-2. In their Amended Bill of Complaint, the plaintiffs say that the construction is illegal because a water tower is not a permitted use in a Residential R-2 district. They further say that even if the court holds that it is a permitted use, it exceeds the height regulations set forth in the City Code; even if it is a permitted use, they say, it cannot, under the

Virginia Code, be erected until the Planning Commission finds that it is consistent with the City's comprehensive plan. The plaintiffs aver that the manner in which the City Council admits that it arrived at the decision to construct the water tower at this location "on residential property adjacent to other residential neighborhoods" (Amended Bill of Complaint, 112) was arbitrary and capricious and constituted abuse of legislative discretion. Plaintiffs also point to the possibility that office space for the Salem YMCA could be constructed within the water tank structure. This, they say, would "convert the subject structure into a building as defined in § 106-1 of the Code for the City of Salem" (Amended Bill of Complaint, 17) not allowed within a Residential R-2 district.

Salem City Code § 106-101 lists the "permitted uses" in a Residential R-2 District. These include, in subsection (6), "Public utilities: poles, lines, distribution transformers, pipes, meters and other facilities necessary for the provision and maintenance of public utilities." The plaintiffs argue that because the term "water tower" (or "water main and elevated tank") does not appear within that definition of public utilities, three "long established principles of statutory construction" (*expressio unius est exclusio alterius, ejusdem generis*, and *noscitur a sociis*) require the court to hold that it is illegal for the City to erect the water tower within a Residential R-2 District.

The provisions of the City Code concerning Residential R-2 Districts include § 106-105, which provides, in part:

In residential districts R-2, the height regulations shall be as follows: Buildings may be erected up to 45 feet in height from grade; except that:

(1) Church spires, belfries, cupolas, monuments, *water towers*, chimneys and flues are exempt ... .

(Emphasis added.)

To construe City Code § 106-101 as the plaintiffs ask would be, effectively, to hold that § 106-105, another provision of the Code addressing the same subject, is meaningless. "Such an interpretation would violate the settled principle of statutory construction that every part of a statute is presumed to have some effect and no part will be considered meaningless unless absolutely necessary. *Sims Wholesale Co. v. Brown-Forman Corp.*, 251 Va. 398, 405, 468 S.E.2d 905, 909 (1996); *Raven Red Ash Coal Corp. v. Absher*, 153 Va. 332, 335, 149 S.E. 541, 542 (1929)." *Hubbard v. Henrico Limited Partnership,* 255 Va. 335, 340-41, 497 S.E.2d 335 (1998).

Likewise, construing the City Code as the plaintiffs ask would be to give effect to one portion of the Code, while ignoring another Code section that deals with the same subject. This, a court cannot do. "As we do not believe the General Assembly intended to enact irreconcilable provisions in the Act, we construe the provisions in a way that gives full effect to all the statutory language." *Marchand v. Division of Crime Victims' Comp.*, 230 Va. 460, 463, 339 S.E.2d 175, 177 (1986). As Judge Annunziata of the Court of Appeals recently explained:

> When interpreting a statute, we examine its provisions in their entirety, rather than by isolating particular words or phrases. *Ragan v. Woodcroft*, 255 Va. 322, 325, 497 S.E.2d 740, 742 (1998); *Buonocore v. C. & P. Tel. Co.*, 254 Va. 469, 472-73, 492 S.E.2d 439, 441 (1997). When a statute's words are not sufficiently explicit, we may determine the intent of the legislature from a comparison of the statute's several parts *in pari materia. Virginia Soc. for Human Life, Inc. v. Caldwell*, 256 Va. 151, 156, 500 S.E.2d 814, 816 (1998). *In pari materia* is the rule of statutory construction that statutes or sections of the same statute relating to the same subject ... "should be read, construed and applied together so that the legislature's intention can be gathered from the whole of the enactments." *Alger v. Commonwealth*, 19 Va. App. 252, 256, 450 S.E.2d 765, 767 (1994) (quoting Black's Law Dictionary 791 (6th ed. 1990)). *See Board of Zoning Appeals of Norfolk v. Kahhal*, 255 Va. 476, 480-81, 499 S.E.2d 519, 522 (1998) (finding that the trial court's reference to various sections of a zoning ordinance *in pari materia* in order to determine another section's purpose and intent did not constitute error). This rule "applies with peculiar force in the construction of a Code to the several parts thereof which relate to the same subject matter, were conceived by the same minds, prepared by the same hands, and adopted at the same time by the same legislative body." *South & W. Ry. Co. v. Commonwealth*, 104 Va. 314, 321, 51 S.E. 824, 826 (1905).

*Hanson v. Commonwealth*, 29 Va. App. 69, 77, 509 S.E.2d 543 (1999).

"A primary rule of statutory construction is that courts must look first to the language of the statute. If a statute is clear and unambiguous, a court will give the statute its plain meaning." *Loudoun County Dept. of Social Services v. Etzold*, 245 Va. 80, 85, 425 S.E.2d 800, 802 (1993). "When an ordinance is plain and unambiguous, there is no room for interpretation or construction;

the plain meaning and intent of the ordinance must be given it." *Board of Zoning Appeals v. 852 L.L.C.*, 257 Va. 485, 488, 514 S.E.2d 767 (1999).

Justice Koontz recently wrote:

> When considering a legislative act, a court may look only to the words of the statute to determine its meaning, and when the meaning is plain, resort to rules of construction, legislative history, and extrinsic evidence is impermissible. *Harrison & Bates, Inc. v. Featherstone Assoc.*, 253 Va. 364, 368, 484 S.E.2d 883, 885 (1997). Accordingly, unless we find that any words of the statute are "inherently difficult to comprehend, of doubtful import, or lacking in clarity and definiteness … it is not necessary to look beyond the plain language of the statute to ascertain its underlying legislative intent." *Id.* at 369, 484 S.E.2d at 886.

*Town of Blackstone v. Southside Electrical Cooperative*, 256 Va. 527, 533, 503 S.E.2d 773 (1998); *also see Higgs v. Kirkbride*, 258 Va. 567, 522 S.E.2d 861 (1999).

It is impossible to read the "exemption" language of City Code § 106-105 without concluding that water towers are permitted within Residential R-2 Districts. If permitted, they must be "public utilities," which are permitted under City Code § 106-101(6). Construing similar, but not identical language in the Rockbridge County zoning ordinance, the Supreme Court of Virginia found public utilities to be those "that provide services which are necessary and essential to any residential area, e.g., electricity, water, gas, telephone and sewerage facilities … ." *WANV v. Houff*, 219 Va. 57, 60-61, 244 S.E.2d 760 (1978). Assuming that construction of the language of the ordinance is necessary here, I construe the language of § 106-101(6) in the same way.

(The plaintiffs do not employ the term "water tower" in their pleadings. I am unable to discern a difference between a "water tower" and an "elevated tank," have found no such distinction in the decided authorities, and have found that structures that are similar to the descriptions and drawings plaintiff's counsel has filed in this case seem universally to be called "water towers." *Error nominis nunquam nocet, si de identitate rei constat.*)

The short answer to the complaint that the water tower will violate the ordinance's height restrictions is that, by their very terms, these restrictions "exempt" water towers. Since the proposed construction is exempt from the height restrictions, the City is not required to follow the Code's provisions for obtaining the permit, after approval by the Planning Commission, that would

be necessary for construction of a nonexempt structure more than forty-five feet in height.

The complaint that the City plans to erect a water tower on property zoned for residential use, adjacent to other residential neighborhoods is, of course, answered by the fact that the plain language of City Code § 106-105 contemplates erection of water towers in Residential R-2 neighborhoods.

*Euclid v. Ambler Realty Co.*, 272 U.S. 365, 47 S. Ct. 114, 71 L. Ed. 303, 54 A.L.R. 1016 (1926), was the case in which the United States Supreme Court first approved the use of zoning ordinances; it is the Magna Carta of zoning cases. The ordinance approved in that case, our Supreme Court noted in *County of Fairfax v. Parker*, 186 Va. 675, 44 S.E.2d 9 (1947), was identical to the one that Fairfax County adopted in 1941. *Id.* at 685. That ordinance's classification of permitted uses in a "single family house district" began:

(1) Single family dwelling.
(2) Public park. Water tower or reservoir.

*Id.* Apparently, as long as zoning ordinances have been written, water towers have been deemed to be consistent with residential neighborhoods. (A Westlaw search of reported decisions in all jurisdictions in the United States, conducted by an inexpert judge on November 20, 1999, disclosed no analogous reported case in which the erection of a water tower or tank in a residentially-zoned neighborhood had been enjoined.)

Virginia Code § 15.2-2232 requires submission to the Planning Commission of plans for construction of public buildings or structures or of public utility facilities in order for the Planning Commission to pass upon whether or not such plans are consistent with the locality's comprehensive plan. The plaintiffs allege that this statute was violated. The defendants deny that the statute applies. The court might be able to conclude from the proffers that submission to the Planning Commission has not taken place. The record does not contain the City's current comprehensive plan (of which I have not been asked to take judicial notice), though the court might fairly infer that, if the comprehensive plan provided for erection of a water tower on the Elizabeth Campus, counsel in argument would have mentioned that fact. This is a matter upon which further evidentiary development might be appropriate. One must note, however, that, under Code § 15.2-2232, if plans are submitted to the Planning Commission and it does not approve of the plans, "[t]he governing body may overrule the action of the commission by a vote of a majority of its membership." The plaintiffs allege that the governing body

unanimously decided to place the water tank on the Elizabeth Campus. Assuming, for the sake of discussion, that the plaintiffs have made a showing that § 15.2-2232 applies and has been violated, this court cannot, under the circumstances, be satisfied, under Virginia Code § 8.01-628, that a temporary or preliminary injunction properly should issue. *Cf. Murray v. Green*, 240 Va. 204, 208, 396 S.E.2d 653 (1990). *Cf. also Mundy v. Hesson*, 215 Va. 386, 395, 209 S.E.2d 917 (1974) (Harrison, J., *dissenting*: "Equity does not insist on purposeless conduct.")

The plaintiffs assert that potential use of a portion of the water tank structure for the YMCA would violate the restrictions imposed on use in a Residential R-2 District. Though plaintiffs have shown that discussion of such use has taken place, they have not shown that such use is imminent. I cannot discern, from the proffers, the evidence, or the argument of counsel, that use *vel non* by the YMCA will affect any decision about whether concrete is placed on November 23. No temporary or preliminary injunction should or will issue based on this hypothetical future use of the structure.

Finally, the plaintiffs complain about the way that the Salem City Council made its decision to erect the water tower on the City's own property on the Elizabeth Campus. The City has admitted in response to requests propounded by the plaintiffs pursuant to Rule 4:11 of the Rules of the Supreme Court of Virginia that, at a meeting held on November 20, 1998, Council unanimously decided that "the prime location of the subject water storage tank was the City-owned Salem Civic Center property which is not zoned R-2"; that the subject was raised again at the end of Council's meeting on December 14, 1998, without public notice and without being on any agenda, "with no discussion or call for discussion on the merits," and "that the reconsideration of the location of the subject water storage tank lasted less than ninety (90) seconds." (Answers to Requests for Admissions, executed by counsel for the City of Salem, received by the Clerk on November 16, 1999, and marked filed by the court on November 19, 1999.)

Citizens of the City who oppose Council's actions and who had communicated to Council their opposition to the use of the Elizabeth Campus for a water tower might well be justified in using negative terms to characterize Council's actions. Council's decision, though, for better or for ill, was made for the corporate body politic of the City by those persons whom the City's voters elected to make such a decision. (Without deciding that this is the standard that applies, I note that the plaintiffs have not produced or proffered in this case evidence that the question of whether to place a water tower on the Elizabeth Campus is not fairly debatable.) If the manner in which that decision was arrived at offends voters in the City of Salem, they may

express their concerns through the political process. "In a democratic society like ours, relief must come through an aroused popular conscience that sears the conscience of the people's representatives." *Baker v. Carr*, 369 U.S. 186, 270 (1962) (Frankfurter, J., dissenting). Unelected judges do not issue injunctions based upon perceptions that decisions of this sort might have been made in a manner that a significant number of citizens might have found arrogant, offensive, or otherwise unfortunate.

In their Amended Bill of Complaint, the plaintiffs suggest that the process by which Council made its decision was "a flagrant violation of the spirit and intent of Virginia's Freedom of Information Act" (¶ 9), and that the decision made at the December 14, 1998, Council meeting was "illegal, null and void" under the Freedom of Information Act (FOIA). The procedural posture of the case does not permit the court to consider issuing an injunction under the FOIA. Also, though the City's admissions are before the court, the plaintiffs did not develop the assertions of violation of the FOIA at the hearing held on November 19 and did not argue that a preliminary injunction should be based on the FOIA.

At the conclusion of the hearing on November 19, 1999, the court prohibited the City from taking certain actions before 8:30 a.m. on Tuesday, November 23, 1999. For the foregoing reasons, the court declines to grant the plaintiffs further relief of a preliminary or temporary nature. The stay issued on November 19 will expire in accordance with its own terms, unless it is extended by a justice of the Supreme Court of Virginia.