PRESENT: All the Justices

HARTFORD UNDERWRITERS
INSURANCE COMPANY, ET AL.

                                              OPINION BY
v. Record No. 211048              JUSTICE WESLEY G. RUSSELL, JR.
                                          DECEMBER 8, 2022

ALLSTATE INSURANCE COMPANY,
ET AL.

### FROM THE CIRCUIT COURT OF THE CITY OF SUFFOLK
Carl E. Eason, Jr., Judge

Hartford Underwriters Insurance Company ("Hartford") and Shoe Show, Inc., doing

business as The Shoe Department ("Shoe Department"), appeal from a judgment of the Circuit

Court of the City of Suffolk granting the "First Amended Complaint in Interpleader with

Accompanying Prayer for Declaratory Relief" filed by Allstate Insurance Company ("Allstate")

and apportioning the interpleaded funds. For the reasons that follow, we affirm the judgment of

the circuit court.

### I. Background

On October 17, 2019, Savannah Padgett was an employee of a Shoe Department store

located in Suffolk. On that day, while Padgett was at work, "Mary Magdalene Brown drove and

crashed her vehicle into [the] Shoe Department store[,]" injuring Padgett.

Padgett asserted a workers' compensation claim against Shoe Department. Hartford,

Shoe Department's workers' compensation carrier, accepted the claim and began paying Padgett

medical and wage indemnity benefits.[1] As of the time of trial below, Hartford had paid Padgett

---

[1] For the purposes of the Virginia Workers' Compensation Act, "employer" is a defined term. *See* Code § 65.2-101. Among other things, the statutory definition of "employer" provides that "[i]f the employer is insured, ["employer"] includes his insurer so far as applicable." Thus, for the purpose of this appeal both Shoe Department and Hartford are considered Padgett's employer.

in excess of $100,000 in medical benefits and approximately $20,000 in wage benefits. Pursuant to Code § 65.2-309, Hartford asserted a lien against any settlement or judgment Padgett might obtain in a personal injury action against Brown.

At the time of the accident, Brown was insured under an automobile liability policy issued by Allstate. The policy had bodily injury limits of $50,000 per person and $100,000 per accident. Padgett retained counsel to pursue her claims.[2] Ultimately, she filed a personal injury suit against Brown in the Circuit Court of the City of Suffolk, and her counsel asserted a statutory lien pursuant to Code § 54.1-3932 against any settlement or judgment. In addition to being potentially liable for damages caused, the filing of the suit triggered Allstate's duty to defend Brown.

Prior to Padgett filing suit against Brown, Hartford sought to initiate an arbitration with Allstate regarding its claimed lien and the $50,000 in coverage afforded by Brown's Allstate policy. Both Hartford and Allstate were signatories to an agreement among insurance companies to arbitrate disputes among signatory insurance companies.

Not wishing to incur the expense of defending Brown in a case of near certain liability, "Allstate offered to tender its limit of $50,000 per person in exchange for a release of its [i]nsured Brown under Va. Code § 38.2-2206(K)" to settle Padgett's claim against Brown. Such a settlement and release would have released Brown from any further claims by Padgett, would have allowed Padgett to proceed with a UM/UIM claim against her automobile liability carrier,[3]

---

[2] Six days after the accident, Padgett retained Decker, Cardon, Thomas, Weintraub & Neskis, P.C. to represent her. She later ended her relationship with that firm and retained Steven Oser, P.C. related to her claims. Both firms claimed an attorney's lien regarding costs advanced and services rendered.

[3] Padgett had UM/UIM coverage in the amount of $100,000 per person and $300,000 per accident under a policy issued by State Farm.

and would have relieved Allstate of any "further duties to its insured, including the duty to defend its insured if an action has been or is brought against" Brown. Code § 38.2-2206(K). Such a settlement potentially would have extinguished any claim that Padgett's UM/UIM carrier would have had against Brown.[4]

Padgett wished to accept Allstate's "tender and walk" offer that would have settled her claims against Brown for Allstate's $50,000 policy limit and would have released Brown from further claims by Padgett. Hartford, however, objected to the settlement, arguing that it was entitled to the full amount of Allstate's coverage and that neither Padgett nor her counsel should be paid any portion of those funds. Hartford conceded in the proceeding below that, if Padgett entered into the settlement without Hartford's consent, she "could be foreclosed from receiving any further benefits from her employer . . . or Hartford under the Virginia Workers' Compensation Act[.]"[5] As a result, Padgett did not accept Allstate's settlement offer.

Unable to settle the matter and faced with competing claims for the $50,000 in coverage, Allstate sought the assistance of the circuit court by filing a complaint in interpleader and accompanying prayer for declaratory relief. Specifically, Allstate requested that the circuit court

---

[4] Code § 38.2-2206(K) provides that, after such a settlement, "the insurer providing applicable underinsured motorist coverage shall have no right of subrogation or claim against the underinsured motorist" unless "the underinsured motorist unreasonably fails to cooperate with the underinsured motorist benefits insurer in the defense of any lawsuit brought by the injured person or his personal representative[.]"

[5] In addition to taking these positions in the proceeding in the circuit court, Hartford took these positions in the attempted arbitration. Specifically, in one of its arbitration filings, Hartford noted that it would "not give consent to Padgett" settling the case on the terms proposed by Allstate because it stood to "lose $20k to an attorney fee" that might be paid to Padgett's counsel from the settlement proceeds. Hartford also asserted that "Padgett's future workers['] compensation benefits will be terminated if she settles [her claim against Brown] without Hartford's consent."

determine the parties entitled to claim any portion of the $50,000 in coverage,[6] bring those parties before the circuit court, determine how the $50,000 should be distributed amongst said parties, discharge Allstate from any liability to such defendants related to the $50,000, restrain all such parties from instituting or prosecuting any proceedings in any court or by way of arbitration that sought to recover the $50,000 in coverage, "enter a declaratory judgment that the payment of Allstate's funds constitutes a tender and walk under Va. Code § 38.2-2206[,] and order that Padgett execute a valid release" of Allstate and Brown.

In responding to Allstate's complaint, Hartford again asserted its claimed "lien of nearly $125,000.00 pursuant to § 65.2-309 of the Code of Virginia" and further averred that it had "made its intention to file intercompany arbitration known to both counsel for Padgett and Allstate six weeks after the date of injury" and had "independently investigated the claim, gathered evidence, identified and contacted the third-party carrier, and filed its intercompany arbitration, all while assisting counsel for Padgett." Hartford argued that, because "[n]either the employer . . . nor Hartford benefited from any action taken by counsel for Padgett[,]" "no attorney fee is due or has been earned [by Padgett's counsel] as it relates to the Allstate policy limit."

In addition to answering the allegations in Allstate's interpleader action, Hartford also requested that the circuit court award it declaratory relief. Hartford first requested that the circuit court declare that Hartford's request for arbitration against Allstate and any resulting arbitration were proper. Hartford also asked the circuit court to allow arbitration to proceed, to prohibit Allstate from paying its coverage limit into the circuit court, and to dismiss the interpleader

---

[6] In its filings below, Allstate named as defendants Hartford; Shoe Department; Padgett; Brown, Decker, Cardon, Thomas, Weintraub & Neskis, P.C.; State Farm; and Arbitration Forums, Inc.

action. Alternatively, Hartford requested that the circuit court order "Padgett to sign the Release presented to her by Allstate[,]" that "Padgett is not entitled to any portion of the Allstate policy limit given Hartford's workers' compensation lien[,]" that Padgett's counsel "is not entitled to any portion of the Allstate policy limit[,]" that Allstate directly pay Hartford all of the $50,000 in coverage available, and other related relief.

The circuit court held a hearing where the parties presented their respective positions. Relying heavily on the decision of the Court of Appeals in *Williams v. Capital Hospice & Companion Property & Casualty Insurance Co.*, 66 Va. App. 161 (2016), Hartford argued that, independent of any action of either Padgett or Brown, it had a right to utilize intercompany arbitration to recover directly from Allstate the amount it had paid for Padgett's benefit up to Allstate's coverage limit.

Allstate and multiple other parties contested Hartford's position, particularly the reliance on *Williams*. Multiple parties called into question whether *Williams* had been correctly decided and further noted that, assuming that it had, it had been superseded by statutory amendments to Code § 65.2-309 that limited the scope of arbitrations in which an employer seeks to exercise its right of subrogation related to a workers' compensation lien.

Having heard the arguments of the various parties, the circuit court granted Allstate's motion for interpleader and its request for declaratory relief.[7] In its order apportioning the interpleaded funds, the circuit court recognized that those funds were "subject to the workers' compensation lien of Hartford Underwriters Insurance Company, which lien is itself subject to

---

[7] The circuit court entered two orders on August 10, 2021. The first ordered that Allstate's $50,000 in coverage was "to be paid into the [c]ourt as authorized pursuant to Va. Code Annot. § 8.01-364(D), and Allstate Insurance Company is hereby discharged from any further liability as to any person or entity making claims against these funds." The second order dealt with the apportionment of those funds and the other issues raised by the parties.

5

the allowance out of it to Savannah Nicole Padgett of a proportionate attorney's fee and reimbursement of costs, as provided in Virginia Code § 65.2-311[.]" The circuit court then ordered that $16,667 was to be "apportioned to Savannah Nicole Padgett for her proportionate attorney's fee" and that $206.36 "be paid to Decker, Cardon, Thomas, Weintraub & Neskis, P.C., in reimbursement of costs it ha[d] advanced on behalf of Savannah Nicole Padgett[.]" The circuit court then ordered that all of the remaining funds be paid to Hartford "in full satisfaction of its lien/subrogation claim in respect to the medical bills and lost wages paid to Savannah Nicole Padgett on account of her injuries in the underlying motor vehicle accident" and determined that "[t]he arbitration underlying this matter, which had been initiated by Hartford . . . against Allstate . . . is now moot, and shall not proceed."[8]

Hartford appeals to this Court. Specifically, it asserts that the circuit "court erred in its construction and application of Code §§ 65.2-309 and 65.2-311 and *Williams v. Capital Hospice & Property & Casualty Insurance Co.*, 66 Va. App. 161 (2016), to this case[,]" and therefore, erred by failing to award the available Allstate coverage "to Hartford in full" or, alternatively, by failing to "permit [the requested] intercompany arbitration to proceed."

---

[8] The circuit court also ordered Padgett to "sign a Release in accordance with Virginia Code § 38.2-2206K in respect to her claim . . . against . . . Brown, and counsel for Ms. Padgett shall sign an Order in the case of *Savannah Nicole Padgett v. Mary Magdalene Brown*, Civil Action No. CL20-2718, In The Circuit Court of the City of Suffolk, specifying that the claim therein . . . is settled in accordance with Virginia Code § 38.2-2206K[.]" Furthermore, the circuit court released both Brown and Allstate "from any and all claims arising out of the personal injuries sustained by . . . Padgett in the motor vehicle accident underlying this matter" and held that said "release does not impair . . . Padgett's right to pursue her claim for underinsured motorist coverage benefits against State Farm[.]"

6

## II. Analysis

### A. Standard of review

Hartford's appeal poses questions of statutory interpretation. As such, it presents questions of law subject to de novo review in this Court. *See Virginia Dep't of Tax'n v. R.J. Reynolds Tobacco Co.*, 300 Va. 446, 454 (2022).

When interpreting a statute, "our primary objective is 'to ascertain and give effect to legislative intent,' as expressed by the language used in the statute." *Cuccinelli v. Rector & Visitors of the Univ. of Va.*, 283 Va. 420, 425 (2012) (internal quotation marks omitted) (quoting *Commonwealth v. Amerson*, 281 Va. 414, 418 (2011)). "[W]e determine the General Assembly's intent from the words contained in the statute." *Williams v. Commonwealth*, 265 Va. 268, 271 (2003) (citing *Vaughn, Inc. v. Beck*, 262 Va. 673, 677 (2001); *Thomas v. Commonwealth*, 256 Va. 38, 41 (1998)). "[W]ords in a statute are to be construed according to their ordinary meaning, given the context in which they are used." *City of Va. Beach v. Bd. of Supervisors*, 246 Va. 233, 236 (1993) (quoting *Grant v. Commonwealth*, 223 Va. 680, 684 (1982)). Accordingly, unless faced with an ambiguity or an absurdity, we accord the words of a statute their plain meaning. *Conyers v. Martial Arts World of Richmond, Inc.*, 273 Va. 96, 104 (2007).

When dealing with an amendment to an already existing statute, these general principles are augmented by a presumption. Specifically, "[s]tatutory amendments are presumed to *amend* statutes—to change something that was there or to add something that was not there before." *Appalachian Power Co. v. State Corp. Comm'n*, 301 Va. ___, ___, 876 S.E.2d 349, 359 (2022); *see also Wisniewski v. Johnson*, 223 Va. 141, 144 (1982) (recognizing the presumption that "a change in law was intended when new provisions are added to prior legislation by an amendatory

7

act") (quoting *Boyd v. Commonwealth*, 216 Va. 16, 20 (1975)). Thus, absent a clear indication to the contrary, we view statutory amendments as the General Assembly effectuating a change in the law. *Id.*

### B. Workers' compensation benefits and strangers to the work

"The Workers' Compensation Act . . . reflects a legislative quid pro quo that gave workers the right to assert no-fault liability against their employers (a right that they had never possessed) and took from them the right to sue their employers in tort for negligence (a right that they had possessed under the common law)." *Lopez v. Intercept Youth Servs., Inc.*, 300 Va. 190, 196 (2021) (quoting *Jeffreys v. Uninsured Emp.'s Fund*, 297 Va. 82, 93 (2019)) (internal quotation marks omitted). Under the Act, an employee is entitled to receive benefits from his employer when he suffers an "injur[y] by accident 'arising out of and in the course of' [his] employment." *Butler v. Southern States Coop., Inc.*, 270 Va. 459, 465 (2005) (quoting Code § 65.2-300).

In general, such benefits are an injured employee's exclusive remedy for a workplace injury falling within the Act. Code § 65.2-307. There is, however, an exception to the Act's exclusivity provision; it "does not apply . . . to a common law action for an employee's injury or death against an 'other party.'" *Napper v. ABM Janitorial Servs.-Mid Atl., Inc.*, 284 Va. 55, 62 (2012) (quoting Code § 65.2-309).

For the purposes of the Act, a tortfeasor is considered an "other party" when that person can be said to be a "stranger" to the work or business of the employer. As we have observed,

> [t]he remedies afforded the employee under the [A]ct are exclusive of all his former remedies within the field of *the particular business,* but the [A]ct does not extend to accidents caused by strangers to the business. If the employee is performing the duties of his employer and is injured by a stranger to the business, the

8

> compensation prescribed by the [A]ct is available to him, but that
> does not relieve the stranger of his full liability for the loss[.]

*Fowler v. Int'l Cleaning Serv., Inc.*, 260 Va. 421, 426 (2000) (quoting *Feitig v. Chalkley*, 185 Va. 96, 102 (1946)).

In this case, it is undisputed that Padgett suffered a compensable injury by accident that arose out of and occurred within the scope of her employment. Thus, she was entitled to workers' compensation benefits under the Act, which Hartford has paid. It also is undisputed that her injuries were caused by Brown and that Brown is a stranger to the employer's business. Accordingly, consistent with Code § 65.2-309(A), Padgett retained her right to pursue a common law action against Brown for the damages she suffered as a result of the accident.

C. Code § 65.2-309(A), workers' compensation liens, and subrogation

Code § 65.3-309(A) not only preserves an injured employee's right to bring a common law action against a "stranger" tortfeasor, it also provides certain protections to employers. Specifically, it grants an employer who has paid workers' compensation benefits an interest in any recovery that the employee obtains from the stranger in such a common law action. In pertinent part, Code § 65.2-309(A) provides that

> [a] claim against an employer under this title for injury,
> occupational disease, or death benefits shall create a lien on behalf
> of the employer against any verdict or settlement arising from any
> right to recover damages which the injured employee, his personal
> representative or other person may have against any other party for
> such injury[.]

Colloquially known as a workers' compensation lien,[9] the lien created by Code § 65.2-309(A) effectively requires an injured employee to reimburse an employer for the workers'

---

[9] As pertinent here, Black's Law Dictionary defines "workers'-compensation lien" as "[a] statutory lien, asserted by a workers'-compensation insurance carrier, against an insured

9

compensation benefits it has paid with the source of the reimbursement being any recovery that the employee receives as a result of a common law claim against a "stranger" tortfeasor.

In addition to preserving an injured employee's right to bring a common law action against a "stranger" tortfeasor and creating a lien for the benefit of employers who have paid benefits against any recovery such action generates, Code § 65.2-309(A) also provides that "such employer also shall be subrogated to any such right and may enforce, in his own name or in the name of the injured employee or his personal representative, the legal liability of such other party." In previously addressing this portion of Code § 65.2-309(A), we have noted that

> [s]ubrogation is, in its simplest terms, the substitution of one party in the place of another with reference to a lawful claim, demand, or right so that the party that is substituted succeeds to the rights of the other. Thus, under Code § 65.2-309, the payment of workers' compensation benefits by an employer merely substitutes the employer in the place of the employee with respect to any right of recovery the employee may have against a third party to the extent of the employer's payment of such benefits.

*Yellow Freight Sys., Inc. v. Courtaulds Performance Films, Inc.*, 266 Va. 57, 64 (2003) (internal citations omitted). Accordingly, consistent with Code § 65.2-309, an employer who has paid workers' compensation benefits need not wait to see when or if an injured employee pursues an action against a "stranger" tortfeasor, but rather, utilizing its right of subrogation, may stand in the employee's shoes and pursue recovery against the "stranger" tortfeasor directly.

D. *Williams* and Code § 65.2-309(E)

Hartford argues that its attempted arbitration with Allstate was simply an exercise of its right of subrogation under Code § 65.2-309(A). It contends that the manner in which it chose to exercise that right, intercompany arbitration as opposed to filing a suit against Brown that

---

worker's recovery from a third-party tortfeasor, to recover benefits paid to the injured worker." Black's Law Dictionary 1110 (11th ed. 2019).

Allstate would have had to defend, is of no moment. In support of this position, Hartford relies on the decision of the Court of Appeals in *Williams*.

In *Williams*, an employee was injured in an automobile accident while in the service of her employer. 66 Va. App. at 165. The accident was caused by the negligence of a stranger to her employer's business. *Id.* As a result, the injured employee was entitled to pursue both a claim for workers' compensation benefits and a claim against the "stranger" tortfeasor. *Id.*

The employer's workers' compensation carrier paid workers' compensation benefits to the injured employee and then, utilizing its right to subrogation under Code § 65.2-309, "initiated arbitration proceedings with . . . the insurance carrier for the third party, seeking recovery of its workers' compensation lien[.]" *Id.* The arbitration was held, and the arbitrator ordered the tortfeasor's insurance carrier to pay the employer the full amount of its workers' compensation lien. *Id.* Neither the injured employee nor her counsel was involved in the arbitration.

Nearly two years after the arbitrator's award, the injured employee, effectively arguing that the arbitration could not be held without her involvement, filed an action in the Commission, asserting that she was entitled to "the pro rata share of attorney's fees and expenses from the" amount the employer had recovered "through arbitration." *Id.* The Commission rejected the employee's arguments, and she appealed to the Court of Appeals. *Id.* at 166.

After noting that, under the version of Code § 65.2-309 then in effect, "there is no statutory requirement that notice of the employer's intention to exercise its right of subrogation be provided to the employee," *id.* at 170 n.1, the Court of Appeals concluded that nothing in the Act precluded an employer from exercising its subrogation rights through intercompany arbitration with the insurance carrier of the "stranger" tortfeasor. *Id.* at 176.

11

Relying on the Court of Appeals' conclusion in *Williams*, Hartford reasons that it was entitled to resolve its subrogation claim through interparty arbitration with Allstate. Hartford's reliance on *Williams* is misplaced because the General Assembly amended Code § 65.2-309 in a material way after the Court of Appeals decided *Williams*.

In deciding the matter, the Court of Appeals applied the version of Code § 65.2-309 that was then in effect. Consistent with the reasoning of *Williams*, that version of Code § 65.2-309 did not limit the method by which an employer could exercise its right of subrogation granted by Code § 65.2-309(A). An employer was free to pursue its subrogation rights through any proper means, including intercompany arbitration. If an employer chose to pursue arbitration, the arbitration could resolve not only "the amount and validity of the employer's lien[,]" Code § 65.2-309(E), but, as recognized in *Williams*, could fully resolve the matter with an "arbitrator . . . ordering [the tortfeasor's insurer] to pay . . . the full lien amount[] to" the employer. 66 Va. App. at 165.

In its first regular session that convened after the Court of Appeals decided *Williams*, the General Assembly amended Code § 65.2-309. *See* 2017 Acts chs. 81, 288. Specifically, the General Assembly amended Code § 65.2-309 to include subsection (E), which addresses "[a]ny arbitration held by the employer in the exercise of such right of subrogation[.]"[10]

In clear and unambiguous language, Code § 65.2-309(E) now limits the scope of any such arbitration. Specifically, Code § 65.2-309(E) provides that such arbitrations "(i) shall be limited *solely* to arbitrating the amount and validity of the employer's lien" and "(ii) shall not

---

[10] At oral argument in this Court, Hartford conceded that the arbitration it attempted to initiate with Allstate was an "arbitration held by the employer in the exercise of such right of subrogation[,]" Code § 65.2-309(E), and that the statute applied.

affect the employee's rights in *any* way[.]"[11] (Emphasis added). These limitations represent a significant change to the pre-existing statutory scheme, and therefore, are presumed to effectuate a change in the law. *Appalachian Power Co.*, 301 Va. at ___, 876 S.E.2d at 359.

Although the prior version of the statute allowed an employer to utilize intercompany arbitration to satisfy its lien, the current version does not.[12] It permits an employer to utilize arbitration only for the limited purposes enumerated in the statute. Specifically, the arbitration is "limited *solely* to arbitrating the amount and validity of the employer's lien[.]" Code § 65.2-309. (Emphasis added). Thus, consistent with Code § 65.2-309(E), an arbitration may address the "amount and validity of the employer's lien[,]" *but no other subject*. Accordingly, the arbitration may not result in an "arbitrator . . . ordering [the tortfeasor's insurer] to pay . . . the full lien amount[]" as was the case in *Williams*. 66 Va. App. at 165.

Recognizing this statutory limitation on the permissible scope of the arbitration sought by Hartford in this case largely resolves the appeal.[13] There has never been a dispute over the

---

[11] In addition to these limitations, Code § 65.2-309(E) requires that "[p]rior to the commencement of such arbitration[,]" the employer has provided certain information to the "employee and his attorney, if any," allowing the employee a chance to object to any of the expenses claimed to be a part of the lien, and requires that any dispute between the parties as to what expenses should be included be litigated before the Commission. Code § 65.1-309(E)(iii)(1-4).

[12] In both the circuit court and on appeal, Hartford has stressed the efficiencies and cost-savings that often are associated with arbitration and noted that Virginia, as a matter of public policy, generally favors arbitration. *See, e.g.*, *Mission Residential, LLC v. Triple Net Properties, LLC*, 275 Va. 157, 161 (2008). Such public policy arguments cannot contravene clear statutory language and should be addressed to the legislature, not the courts. *See Daily Press, LLC v. Off. of Exec. Sec'y of Supreme Ct.*, 293 Va. 551, 557 (2017) ("Public policy questions concerning where to draw the line . . . fall within the purview of the General Assembly. In a regime of separated powers that assigns to the legislature the responsibility for charting public policy, our function is limited to adjudicating [] question[s] of law[.]").

[13] Throughout the proceedings, appellees also have argued that the limitation in Code § 65.2-309(E)(ii), prohibiting the arbitration if it would "affect the employee's rights in any way[,]" also serves as a bar to Hartford's requested arbitration. Given our conclusion that the

13

validity of Hartford's lien or that it far exceeded the available coverage from Allstate in amount. Accordingly, because any arbitration would have been "limited solely to arbitrating the amount and validity of the employer's lien," Code § 65.2-309(E), and no other subject, there was no issue to be resolved in the requested arbitration.

Furthermore, the inability of an arbitrator to order Allstate to make payment to Hartford meant that the arbitration could not result in a "verdict or settlement arising from any right to recover damages which the injured employee . . . may have against any other party for such injury," Code § 65.2-309(A), from which Hartford's lien could be satisfied. Thus, while valid, Hartford's lien required an additional event, a settlement or verdict in a claim by Padgett against Brown or a settlement or verdict in a subrogation action by Hartford against Brown, before Hartford could receive payment. *Cf. Harrison & Bates, Inc. v. Featherstone Assocs. Ltd. P'ship*, 253 Va. 364, 370 (1997) (recognizing that "an inchoate lien is one which attaches to property by operation of a statute or entry of a judgment, but which cannot be enforced until it becomes a consummate lien by the appropriate statutory or judicial process"). Thus, absent some further proceeding or occurrence, Hartford's lien could not be satisfied.

Faced with potentially valid claims from Padgett, her counsel, and Hartford for its applicable coverage limit, Allstate reasonably sought the assistance of the circuit court by filing its complaint in interpleader. The resulting orders of the circuit court provided the requisite "verdict or settlement[,]" Code § 65.2-309(A), from which the competing claims could be

---

limitation in Code § 65.2-309(E)(i) resolves the matter, we need not, and therefore, do not address whether, under these facts, Code § 65.2-309(E)(ii) would have barred the requested arbitration. *See Commonwealth v. White*, 293 Va. 411, 419 (2017) (recognizing that "[t]he doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available'") (internal citation omitted).

14

satisfied, and we find no error in the circuit court's apportionment of the funds. *See* Code §§ 65.2-310 & 65.2-311. Accordingly, the judgment of the circuit court is affirmed.

### III. Conclusion

For the foregoing reasons, the circuit court did not err in granting Allstate's "First Amended Complaint in Interpleader with Accompanying Prayer for Declaratory Relief" or in its apportionment of the interpleaded funds. Accordingly, we affirm the judgment of the circuit court.

*Affirmed*.