Present:  All the Justices

BOARD OF ZONING APPEALS
FOR THE COUNTY OF YORK
                          OPINION BY JUSTICE A. CHRISTIAN COMPTON
v.  Record No. 981246              April 16, 1999

852 L.L.C.


                FROM THE CIRCUIT COURT OF YORK COUNTY
                     N. Prentis Smiley, Jr., Judge

     In this land use controversy, we consider whether the trial

court erred in reversing a board of zoning appeals' decision

that had affirmed a zoning administrator's interpretation of a

local ordinance prescribing computation of developable land

area.  At issue is whether a landowner should be allowed a 100%

density credit that is set forth in the ordinance.

     The ordinance in question is titled "Computation of

buildable or developable area."  York County, Va., Code § 24.1-

203 (1996).  As pertinent, the section provides:  "In accordance

with the comprehensive plan, certain land areas shall not be

developed at all and others may only be credited partially

toward buildable or developable area.  These shall be determined

on a case-by-case basis utilizing the percentages shown in the

table below where . . . [t]he 'Density' column contains the

percentage of the specified land type which may be included in

calculations of net developable density."

The table in § 24.1-203 provides for specified density credits for various land types. In subparagraph (g), "0%" density credit is allowed for: "Areas of existing ponds, lakes, or other impounded water bodies . . . ." In subparagraph (h), "100%" density credit is allowed for: "Stormwater management ponds or basins." In subparagraph (i), "50%" density credit is allowed for certain "non-tidal wetlands."

Appellee 852 L.L.C. owns a parcel of undeveloped land at the intersection of Hampton Highway (Route 134) and Big Bethel Road in York County. The parcel contains approximately 30 acres with a body of water of about 11 acres situated in the center. The parcel is zoned "RMF (residential multi-family)." The landowner plans to construct a multi-family apartment project on the developable area.

In 1997, the landowner sought a ruling from the County's zoning administrator "about density credit for the existing lake." The landowner contended it was entitled to 100% density credit under subparagraph (h) of the ordinance. Responding in a letter dated August 1, 1997, the administrator decided to "allow a density credit for 5.6 acres of lake area." According to the administrator, "This allowance represents an area of 18.6% of the 30-acre site."

The landowner appealed the administrator's decision to appellant Board of Zoning Appeals for the County of York.

Following an October 1997 public hearing, the Board adopted a resolution upholding the administrator's decision.

The landowner presented to the circuit court, pursuant to former Code § 15.1-497 (now § 15.2-2314), a petition for certiorari for review of the Board's decision. The court allowed the writ and the Board timely filed a return, later amended, which included a verbatim copy of the minutes of the public hearing.

The trial court considered the matter upon the record without taking testimony and upon argument of counsel in a March 1998 hearing. At the close of the hearing, the trial court stated that the language of the ordinance is "clear and simple," that it was "conceded" the body of water was a "storm water management" facility, and that the ordinance required the landowner "be given 100 percent density allocations." The court said that the Board "applied erroneous principles of law" and that its decision "was plainly wrong and in violation of the intended purpose of the zoning ordinance."

In an April 1998 final decree, the trial court reversed the Board's decision and ruled that the landowner be "granted a density credit equal to 100% of the total acreage of the lake located on its property." The Board appeals.

On appeal, the Board argues that the ordinance "is ambiguous when applied to the subject property."

"Unfortunately," according to the Board, "the ordinance does not clearly provide for density credit calculations for a pond which is all at once an existing impoundment of water and a stormwater management facility and a nontidal wetland."  The Board contends, "Some degree of interpretation is needed to have the ordinance make sense in the present situation."

The "present situation" to which the Board refers is that the existence of the body of water in question is a sequel to mining of the land in the early 1970s to sell dirt to the "Highway Department."  The borrow pit thus created eventually filled with water that drained from adjacent properties, as reflected in two recorded drainage easements, as well as water that drained from the subject property.  In 1996, when the landowner was considering purchase of the subject property, the U.S. Army Corps of Engineers issued a notice that the body of water is a nontidal wetland within its jurisdiction.

During the public hearing, the zoning administrator articulated the rationale for his decision.  He stated that he "initially took the position that we were dealing with an existing body of water and our Ordinance is very clear.  It says for an existing body of water you get 0% credit for density."  When the landowner complained this was an unfair interpretation of the ordinance, the administrator stated that "in deference" to the landowner's arguments he was "willing to look at it as a

stormwater management facility; but not in its entirety, only for that portion that would be required to meet the stormwater management requirements of this drainage area." Thus, he arrived at the 18.6% allowance for the 30-acre site.

The Board argues that the body of water "will be" used as a stormwater management pond when the area is developed. "Just as surely," the Board contends, "it is an existing lake much larger than needed to contain storm flows" from the landowner's parcel and from approximately 15 acres of adjacent land. "No less," the County continues, "it is a nontidal wetlands within the jurisdiction of the Army Corps of Engineers."

"And so," the Board argues, "the resolution of this conundrum cannot arise only from the text of County Code section 24.1-203 because the pond cannot be afforded density credits simultaneously of 100 percent, zero percent, and 50 percent. The Zoning Administrator's proposal, on the other hand, offers a fair interpretation of the ordinance which recognizes legitimate development expectations, while protecting the County from overdevelopment." We disagree with the Board's argument.

Certainly, from the County's perspective the zoning administrator equitably solved the problem presented in this case. Nonetheless, his decision extended beyond permissible ordinance interpretation and became prohibited legislative action taken by an administrator.

5

The principles applicable here are settled. When an ordinance is plain and unambiguous, there is no room for interpretation or construction; the plain meaning and intent of the ordinance must be given it. Donovan v. Board of Zoning Appeals, 251 Va. 271, 274, 467 S.E.2d 808, 810 (1996); McClung v. County of Henrico, 200 Va. 870, 875, 108 S.E.2d 513, 516 (1959).

But, a "decision of a board of zoning appeals is presumed to be correct on appeal to a circuit court; the appealing party bears the burden of showing that the board applied erroneous principles of law or that its decision was plainly wrong and in violation of the purpose and intent of the zoning ordinance." Masterson v. Board of Zoning Appeals, 233 Va. 37, 44, 353 S.E.2d 727, 732-33 (1987).

And, a consistent construction of an ordinance by officials charged with its enforcement is given great weight. "Nevertheless, if the administrative interpretation of a portion of an ordinance is so at odds with the plain language used in the ordinance as a whole, such interpretation is plainly wrong, and must be reversed." Cook v. Board of Zoning Appeals, 244 Va. 107, 111, 418 S.E.2d 879, 881 (1992). This is such a case.

We agree with the trial court, and with the zoning administrator's observation at the public hearing, that the language of the ordinance is clear. The ordinance provides that

computation of buildable or developable area "shall" be determined utilizing the percentages set forth in the ordinance. Under subparagraph (h), "Stormwater management ponds or basins" are entitled to a density credit of 100 percent.

As the trial court found, it was conceded at the public hearing that the body of water in question presently is an existing stormwater management facility, receiving runoff from the subject parcel as well as adjacent properties, and that it is not a mere pond, lake, or wetland. For example, as the public hearing began, the Board's secretary, in summarizing "the background and factual information" relating to the landowner's application stated, "In the current request, the applicant and the staff agree that the lake serves stormwater management needs." Also, during the hearing, the zoning administrator said "we're willing to look at it as a stormwater management facility."

In addition, the evidence supported the concession. The 1996 notice from the Corps of Engineers stated that the "pond is used for stormwater management."

Therefore, the zoning administrator should have interpreted the ordinance as written. Nowhere does the ordinance permit the administrator to allocate a reduced density credit based on what the administrator and his staff determine is the appropriate percentage "necessary for a development site such as the subject

7

property," as the administrator said in his August 1997 ruling. Had the County Board of Supervisors intended the administrator to have such latitude, it would have so provided in the ordinance; such latitude may not properly be created by administrative interpretation.

Consequently, we hold the trial court did not err in reversing the Board's decision that adopted the zoning administrator's interpretation.  The interpretation was plainly wrong and the Board applied erroneous principles of law in adopting it.  Thus, the judgment below will be

<u>Affirmed</u>.