Present:  All the Justices

MICHAEL HIGGS, ET AL.

v.  Record No. 990006

MICHAEL AND DELORES KIRKBRIDE

                              OPINION BY
                    JUSTICE LAWRENCE L. KOONTZ, JR.
                         November 5, 1999

ARLINGTON COUNTY BOARD OF
 ZONING APPEALS

v.  Record No. 990073

MICHAEL AND DELORES KIRKBRIDE

           FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
                   Benjamin N.A. Kendrick, Judge


     In these appeals, which we consolidated for argument, the

primary issue we consider is whether the trial court erred in

reversing a decision of a board of zoning appeals that a lot

created by the subdivision of an existing residential lot is

irregularly shaped and, thus, does not have a sufficient average

width for the zone in which the lot is located.

                            BACKGROUND

     The dispositive facts are not in dispute.  Michael L.

Kirkbride and Delores A. Kirkbride (the Kirkbrides) are the

owners of Lot 11, commonly known as 6226 North 23rd Street, in

the Fenwick & Lutrell's Addition of East Falls Church in

Arlington County.  Lot 11 is quadrilateral, roughly trapezoidal

in shape, with a 100.09-foot front line on North 23rd Street. The lot is approximately 200 feet deep. Because the west lot line is slightly askew from the perpendicular to the front lot line, the lot narrows to a parallel back lot line of 90.37 feet. Lot 11 is located in an R-6 zone, in which, pursuant to the local zoning ordinance, a lot must consist of not less than 6,000 square feet and have an average width of at least 60 feet.

On November 19, 1997, a preliminary plat subdividing Lot 11 was approved by the Arlington County zoning administrator's office. That subdivision created two lots: Lot 11-A and Lot 11-B. Lot 11-A, which is the lot at issue in this appeal, includes the original residence on former Lot 11 and comprises the northeast corner of the original lot. To complete the subdivision, the Kirkbrides would be required to remove a sunroom porch on the west side of the residence in order to comply with setback regulations.

Lot 11-A is quadrilateral with no parallel sides and no congruent angles. It has a northern front line on North 23rd Street of 60.04 feet. The west lot line of Lot 11-A is parallel to the original west lot line of former Lot 11 and, thus, is slightly askew from the perpendicular to the front lot line. As a result, the lot narrows to less than 60 feet immediately beyond the front lot line. At a depth of 105.16 feet on the west lot line, the south lot line is set at approximately a 45-

2

degree angle to the southeast, creating a south lot line of 71.60 feet and an east lot line of 150.94 feet. Lot 11-B consists of the remainder of the original lot. In these configurations, each lot consists of more than 6,000 square feet as required in the R-6 zone.

Michael and Mary Lou Higgs, Hans and Rebecca Salzinger, Aida Morales, William and Virginia King, and Stephen and Susan Slye (the neighbors) own properties on North 23rd Street that adjoin or are near former Lot 11. After the zoning administrator approved the subdivision plat, the neighbors filed a petition with the Arlington County Board of Zoning Appeals (the BZA) challenging the zoning administrator's determination that Lot 11-A conformed to the minimum width requirements for the R-6 zone.[1] The neighbors contended that Lot 11-A is irregularly shaped and, thus, the zoning administrator had erred by permitting the south lot line to be used as the rear lot line in the measurements for determining the average width of the lot as if Lot 11-A were a regularly shaped lot. The neighbors further contended that by calculating the average width in the manner applicable to irregularly shaped lots, Lot 11-A has an average lot width of only 48.11 feet.

---

[1]No challenge was asserted against Lot 11-B.

3

In defending the appeal before the BZA, the Kirkbrides relied upon the zoning administrator's interpretation of the zoning ordinance. In its definitions section, the ordinance sets out the method for determining the average width of a lot, the "rear lot line" being one of the measurements used in that determination. The ordinance defines the rear lot line as "[t]hat lot line which is the most distance from, and the most nearly parallel with, the front lot line. In the case of a triangular or otherwise irregularly shaped lot, a line at least ten (10) feet in length entirely within the lot and parallel to and at a maximum distance from the front lot line."

The Kirkbrides contended that the south lot line of Lot 11-A is the rear lot line as defined by the ordinance because the south lot line is the "line which is the most distance from, and the most nearly parallel with, the front lot line." They further contended that the zoning administrator has consistently interpreted this definition of a rear lot line in the ordinance as applying to any quadrilateral lot. Finally, the Kirkbrides correctly noted that using this interpretation results in a determination that Lot 11-A satisfies the requirement of having an average width of at least 60 feet.

The BZA determined that Lot 11-A is "irregularly shaped," and consequently, using the 10-foot measurement for the rear lot line specified in the ordinance, that Lot 11-A fails to meet the

4

minimum average lot width required by the ordinance for the R-6 zone. Accordingly, the BZA voted unanimously to reverse the zoning administrator's determination.

The Kirkbrides petitioned the Circuit Court of Arlington County for a writ of certiorari to review the decision of the BZA, which the trial court granted on May 8, 1998. Thereafter, the trial court granted the neighbors' petition to intervene.

While the certiorari proceeding was pending, the Arlington County Attorney, representing the BZA, sought to have a memorandum placed in the County's land records voiding the approved subdivision plat on the ground that the challenge to the zoning administrator's preliminary determination that Lot 11-A was not an irregularly shaped lot prohibited finalizing the approval process for the subdivision. The Kirkbrides sought an injunction from the trial court prohibiting this action prior to the resolution of the certiorari proceeding. The County Attorney and the Kirkbrides reached an agreement that the proposed memorandum would state that the subdivision "may" be void, subject to the outcome of the certiorari proceeding. The trial court memorialized this agreement in an order, and found that as a result the need for an injunction had been mooted.

On September 3, 1998, the trial court heard argument from the parties on the merits of the case. Essentially, the parties took the same positions they had taken before the BZA. The

Kirkbrides again contended that since Lot 11-A is quadrilateral, it is not "triangular or otherwise irregularly shaped" as provided in the zoning ordinance. This is so, they contended, because the south lot line of the lot is "the most distance from, and the most nearly parallel with, the front lot line" and, thus, is the "rear lot line" as defined by the ordinance for purposes of determining the average width of the lot. The Kirkbrides also presented exhibits from the zoning appeal purporting to show that there are other similarly subdivided lots in Arlington County and that the zoning administrator had consistently treated any quadrilateral lot as having an identifiable rear lot line even if the rear lot line was significantly out of parallel with the front lot line. In addition, the Kirkbrides noted that the trial court had affirmed a decision of the BZA in an earlier certiorari proceeding where the BZA had affirmed the zoning administrator's determination that a lot with a similarly angled rear lot line was regular in shape.

The BZA and the neighbors contended that the BZA was not bound by prior actions of the zoning administrator. The BZA further contended that its determination in the present case could be distinguished from the zoning administrators' approval of other quadrilateral lots, including the lot at issue in the prior certiorari proceeding cited by the Kirkbrides, because in

each of those instances the side lot lines were parallel and perpendicular to the front lot lines. The BZA noted that here the west lot line diverges from the perpendicular and, thus, Lot 11-A is in no way symmetrical.

At the conclusion of the argument, the trial court indicated that it would reverse the decision of the BZA as "plainly wrong and I think what's been going on for the last decade should continue unless the [C]ounty [B]oard [of Supervisors] changes it." Prior to the entry of a final order, the trial court heard argument on a joint motion to reconsider. At that hearing, the neighbors contended that the trial court had applied an improper standard of review in rendering its decision, asserting that the trial court could not substitute its own definition of "irregularly shaped" if "reasonable people can say that's an irregular lot, which the BZA has found." The BZA asserted that the trial court had erred in giving deference to the determination of the zoning administrator rather than to the determination of the BZA. The trial court denied the motion to reconsider.

In the final order, the trial court reversed the decision of the BZA, stating that the decision was "plainly wrong" and that the BZA had "applied erroneous principles of law." The order goes on to state that because Lot 11-A conforms to the R-6 zone requirements, the subdivision plat "is a valid and legal

7

subdivision of the property." The BZA and the neighbors recorded lengthy objections on the final order, referencing their arguments at the original hearing and at the hearing on the motion to reconsider. The BZA further objected that the validity of the subdivision plat was not properly before the trial court. We awarded appeals to the BZA and the neighbors.[2]

DISCUSSION

In considering these appeals, we are guided by well-established principles of law. On review before the trial court, the decision of a board of zoning appeals "is presumed to be correct and can be reversed or modified only if the trial court determines that the BZA applied erroneous principles of law or was plainly wrong and in violation of the purposes and intent of the zoning ordinance" and "[t]he party challenging the BZA's decision has the burden of proof on these issues." Foster v. Geller, 248 Va. 563, 566, 449 S.E.2d 802, 804-05 (1994); see also Board of Zoning Appeals v. 852 L.L.C, 257 Va. 485, 489, 514 S.E.2d 767, 770 (1999); Masterson v. Board of Zoning Appeals, 233 Va. 37, 44, 353 S.E.2d 727, 732-33 (1987).

In addition, the principles relevant to the construction of a zoning ordinance, whether by a court or by a board of zoning

_____

[2]Stephen and Susan Slye are not parties to the neighbors' appeal.

appeals, are also well-established.  In considering the deference which must be afforded to zoning officials in such cases, we have said that while "statutes and ordinances delegating zoning authority may be broadly construed to prevent zoning officials from becoming unnecessarily hamstrung in their efforts to enforce zoning ordinances, administrative zoning actions must be grounded within the statutory framework provided."  Foster, 248 Va. at 569, 499 S.E.2d 806 (citations omitted).  In doing so, "[t]he words of the ordinance are to be given their plain and natural meaning.  The purpose and intent of the ordinance should be considered but the ordinance should not be extended by interpretation or construction beyond its intended purpose."  Donovan v. Board of Zoning Appeals, 251 Va. 271, 274, 467 S.E.2d 808, 810 (1996) (citations omitted).

The parties agree that the zoning ordinance at issue here is unambiguous.  Accordingly, the efforts of all the parties, but those of the Kirkbrides particularly, in the hearings before the BZA, in the trial court, and on appeal, to rely upon or distinguish prior interpretations of the ordinance and its legislative history are irrelevant to the issue that was before the BZA and the trial court, and is now before this Court on appeal.  See Town of Blackstone v. Southside Elec. Cooperative., 256 Va. 527, 533, 506 S.E.2d 773, 776 (1998) ("When considering a legislative act, a court may look only to the words of the

statute to determine its meaning, and when the meaning is plain, resort to rules of construction, legislative history, and extrinsic evidence is impermissible").

Nor do the parties contest the mathematical results of the two differing methods for determining average lot width under the ordinance.[3]  Rather, the sole issue before the BZA was whether the zoning administrator erred in not treating Lot 11-A as an "otherwise irregularly shaped lot."  Similarly, the BZA's action in reversing that decision of the zoning administrator was the sole issue before the trial court, and its review of that decision was subject to the standard of deference and presumption of correctness set out above.

The ordinance provides no definition for "otherwise irregularly shaped lot," and therefore we must ascribe to the words their usual meaning.  "Irregular" means "failing to accord with what is usual . . . lacking perfect symmetry of form." Webster's Third New International Dictionary 1196 (1993).  It is clear from the definition of a rear lot line as the "line which is the most distance from, and the most nearly parallel with, the front lot line," that a lot need not be perfectly

---

[3]For reasons not made clear in the record, at least three different plats of the subdivision, with slight discrepancies in the lengths of the lines of Lot 11-A, were submitted during the proceedings below.  These discrepancies have no effect on our consideration of the issues in these appeals.

symmetrical in order to have an identifiable rear lot line. However, it is equally clear that, by inclusion of a separate and distinct provision for determining and limiting the length of the "rear lot line" for a lot "otherwise irregularly shaped," the legislative intent of the zoning ordinance is to assure a minimum average width and consistency among all lots in a particular zone.

Lot 11-A is 60 feet in width at no point other than at its front lot line. Only by virtue of the elongated south lot line being treated as the "rear lot line" can the lot achieve the necessary minimum width required for a lot in the R-6 zone. Moreover, in light of Lot 11-A's patent lack of symmetry, we hold that the BZA's determination that it is "irregularly shaped" was based on a sound reading of the ordinance under appropriate principles of law, is supported by the record and, therefore, is not plainly wrong or in violation of the purpose and intent of the ordinance. The trial court erred in holding to the contrary.[4]

---

[4]The BZA and the neighbors contend that the trial court erred by holding the BZA had failed to give deference to the zoning administrator's determination that under the ordinance the south lot line of Lot 11-A constituted the rear lot line. It is not clear that the trial court so held. Accordingly, we simply note that the power of the BZA to review the decisions of a zoning administrator is provided for under Code § 15.2-2309(3). "In exercising its powers the board may reverse or affirm, wholly or partly, or may modify, an order, requirement,

Finally, we consider the BZA's assertion that the trial court erred in declaring the previously recorded subdivision plat to be valid. We will assume, without deciding, that this issue was properly before the trial court as a result of the agreement between the County Attorney and the Kirkbrides to have the conditional memorandum recorded in the land records pending the outcome of the certiorari proceeding. It is self-evident that our resolution of the main issue presented by this appeal negates the effect of the trial court's ruling that the subdivision plat is valid. Therefore, we will direct the parties to correct the land records in a manner consistent with this opinion.

## CONCLUSION

Accordingly, and for these reasons, we will reverse the judgment of the trial court and enter final judgment in favor of the BZA and the neighbors.

Reversed and final judgment.

---

decision or determination appealed from." Code § 15.2-2312. It is an appropriate function of the board to reverse a decision of a zoning official where the board determines that the decision is contrary to the plain meaning of the ordinance and the legislative intent expressed therein. The board owes no deference to the zoning official in that circumstance.

12