Present:   All the Justices

CITY OF EMPORIA
BOARD OF ZONING APPEALS

                              OPINION BY JUSTICE LEROY R. HASSELL, SR.
v.  Record No. 010027                January 11, 2002

WAYNE MANGUM

          FROM THE CIRCUIT COURT OF GREENSVILLE COUNTY
                  Robert G. O'Hara, Jr., Judge

     In this appeal, we consider whether a mobile home

constitutes a nonconforming use under the Code of Ordinances

of the City of Emporia and, if so, whether the owner of a

mobile home park may permit a tenant to replace a mobile home

that was destroyed.

     The relevant facts necessary for our resolution of this

appeal have been stipulated by the litigants.  Wayne Mangum is

the owner of a mobile home park located in the City of Emporia

(the City).  The mobile home park existed before the City

adopted a zoning ordinance contained in the City's Code of

Ordinances (City Code).

     Upon adoption of the City Code in 1975, the mobile home

park was deemed a nonconforming use.  Mangum does not own, nor

has he ever owned, mobile homes located within his mobile home

park.  Rather, he has leased space to tenants who own their

individual mobile home units.  When a tenant removes a mobile

home from the park upon the expiration of a lease, Mangum

rents space to a new tenant who locates a mobile home unit in the mobile home park.

A mobile home located in the park was destroyed by fire. The City Manager of Emporia informed Mangum that he could not permit a tenant to place another mobile home in the park as a substitute for the mobile home that had been destroyed. The City Manager stated in a letter to Mangum that each mobile home in the mobile home park constituted a nonconforming use pursuant to § 90-12 of the City Code and that a new mobile home "may not be substituted upon damage to 50% of its value." The City Manager also emphasized to Mangum the mobile home park's status as a nonconforming use.

Mangum appealed the decision of the City Manager to the Board of Zoning Appeals which approved the decision of the City Manager, thereby barring Mangum from renting the space previously occupied by the mobile home that had been destroyed in the fire. Mangum filed a petition for writ of certiorari in the circuit court and asserted that § 90-12 of the City Code permitted him to continue his nonconforming use of his mobile home park and that the City Code authorizes him to replace mobile homes within the mobile home park. The circuit court agreed with Mangum and entered an order that reversed the decision of the Board of Zoning Appeals. The City appeals.

2

The City argues that mobile home units are nonconforming structures within the meaning of the City Code. Continuing, the City asserts that Mangum is not entitled to replace a mobile home in his mobile home park as a substitute for a mobile home that was destroyed. Responding, Mangum argues that pursuant to the City Code, he is entitled to replace mobile homes in his park.[1] We disagree with Mangum.

Section 90-1 of the City Code contains the following definitions which are pertinent to our resolution of this appeal:

> "Building means a structure having a roof supported by columns or walls for the shelter, support or enclosure of persons, animals or chattels. When separated by division walls from the ground up without openings, each portion of such building shall be deemed a separate building. The word 'building' also includes the words 'use' and 'structure.'
>
> . . . .
>
> "Manufactured home/mobile home means a structure intended for human habitation that is subject to federal regulation, is transportable in one or more sections, is eight body feet or more in width or 40 body feet or more in length, or when erected is 320 or more square feet in area.
>
> . . . .
>
> "Nonconforming activity means the otherwise legal use of a building or structure or of a tract

---

[1] We find no merit in Mangum's argument that the City failed to assert in the circuit court that the mobile homes constitute nonconforming structures. The City raised this issue in its motion to reconsider.

of land that does not conform to the use regulations of this chapter for the district in which it is located, either as of April 4, 1975, or as a result of subsequent amendments to this chapter.

. . . .

"Structure means anything constructed or erected, which requires location on the ground, or attached to something having location on the ground."

Section 90-12 of the City Code states in relevant part:

"No nonconforming building or use shall be enlarged, extended, reconstructed, substituted, or structurally altered, except when required by law or order, unless the use thereof is changed to a use permitted in the district in which located . . . ."

The principles applicable to this appeal are well established. "When an ordinance is plain and unambiguous, there is no room for interpretation or construction; the plain meaning and intent of the ordinance must be given it." Board of Zoning Appeals v. 852 L.L.C., 257 Va. 485, 489, 514 S.E.2d 767, 769 (1999); accord Donovan v. Board of Zoning Appeals, 251 Va. 271, 274, 467 S.E.2d 808, 810 (1996); McClung v. County of Henrico, 200 Va. 870, 875, 108 S.E.2d 513, 516 (1959). Additionally, the decision of a board of zoning appeals is presumed to be correct on appeal to the circuit court, and the appealing party has the burden of showing that the board applied erroneous principles of law or that the board's decision was plainly wrong and in violation of the purpose and intent of the zoning ordinance. Higgs v.

4

Kirkbride, 258 Va. 567, 573, 522 S.E.2d 861, 864 (1999); 852 L.L.C., 257 Va. at 489, 514 S.E.2d at 770; Masterson v. Board of Zoning Appeals, 233 Va. 37, 44, 353 S.E.2d 727, 732-33 (1987).

Applying the language in § 90-12 of the City Code, it is clear, by definition, that the mobile homes situated in Mangum's mobile home park are structures. Each mobile home is a structure within the definitions of the words "building," "mobile home," and "structure," contained in the City Code. Thus, in accord with the City Code's definition of "nonconforming activity," each mobile home located within the mobile home park became a nonconforming use after April 4, 1975, the effective date of the City Code.

We hold that the circuit court erred by ruling that a mobile home, once destroyed, could be replaced by another mobile home. The plain language in § 90-12 of the City Code prohibits the substitution of a nonconforming building except under certain prescribed conditions, which are not present in this proceeding. And, pursuant to the definitions found in § 90-1 of the City Code, a mobile home is a building.

We also note that this holding is consistent with our decision in City of Chesapeake v. Gardner Enterprises, 253 Va. 243, 482 S.E.2d 812 (1997). There, the City of Chesapeake adopted a comprehensive amendment to its zoning ordinance that

5

prohibited the owner of property from constructing additional buildings or structures to support the nonconforming use on a site. The operator of a cemetery requested a building permit for the construction of an additional mausoleum on the cemetery property. The cemetery was a nonconforming use. The zoning administrator denied the application because the ordinance expressly prohibited the construction of new buildings or structures to support nonconforming uses. The Board of Zoning Appeals approved the administrator's decision. Id. at 245, 482 S.E.2d at 813-14. We held that Code § 15.1-492,[2] which permitted local governments to limit a nonconforming land use, or a nonconforming building or structure, to its existing use or to a more restricted use, implicitly granted local governments the authority to regulate

_____

[2] Former Code § 15.1-492 stated: "Nothing in this article shall be construed to authorize the impairment of any vested right, except that a zoning ordinance may provide that land, buildings, and structures and the uses thereof which do not conform to the zoning prescribed for the district in which they are situated may be continued only so long as the then existing or a more restricted use continues and such use is not discontinued for more than two years, and so long as the buildings or structures are maintained in their then structural condition; and that the uses of such buildings or structures shall conform to such regulations whenever they are enlarged, extended, reconstructed or structurally altered and may further provide that no 'nonconforming' building or structure may be moved on the same lot or to any other lot which is not properly zoned to permit such 'nonconforming' use." This statute has been amended and is currently Code § 15.2-2307. The amendments, however, do not affect our decision in Gardner Enterprises.

6

new construction.  Id. at 248, 482 S.E.2d at 815.  We conclude that the rationale that we applied in Gardner Enterprises is equally applicable here.  Just as the City of Chesapeake had the authority to enact a zoning ordinance prohibiting a cemetery operation from constructing a new mausoleum, the City of Emporia has the authority to enact a zoning ordinance that prohibits an owner of a mobile home park from allowing a renter to replace a nonconforming structure that was destroyed.

We also note, as we stated in Gardner Enterprises, that "[n]onconforming uses are not favored in the law because they detract from the effectiveness of a comprehensive zoning plan."  Id.

Mangum argues that the City has impaired his vested rights to use his property and that the City violated his rights of due process.  We do not consider these arguments. We have held that

> "a board of zoning appeals 'is a creature of statute possessing only those powers expressly conferred upon it.' Lake George Corp. v. Standing, 211 Va. 733, 735, 180 S.E.2d 522, 523 (1971).  Code § 15.1-497[3] provides that '[u]pon the presentation of [a]

---

[3] Former Code § 15.1-497 stated in relevant part:
"Any person or persons jointly or severally aggrieved by any decision of the board of zoning appeals, or any aggrieved taxpayer or any officer, department, board or bureau of the county or municipality, may present to the circuit court of the county or city a petition specifying the grounds on which

7

petition, the court shall allow a writ of certiorari to review the decision of the board of zoning appeals.' . . . [T]his expressly limited standard of review [of] the certiorari process does not authorize a trial court to rule on the validity or constitutionality of legislation underlying a board of zoning appeals decision."

Board of Zoning Appeals v. University Sq. Assoc., 246 Va. 290, 294, 435 S.E.2d 385, 388 (1993).

Mangum's remaining arguments are without merit. Accordingly, we will reverse the judgment of the circuit court and enter final judgment in favor of the City.

<u>Reversed and final judgment</u>.

---

aggrieved within thirty days after the filing of the decision in the office of the board.
  "Upon the presentation of such petition, the court shall allow a writ of certiorari to review the decision of the board of zoning appeals and shall prescribe therein the time within which a return thereto must be made and served upon the realtor's attorney, which shall not be less than ten days and may be extended by the court. The allowance of the writ shall not stay proceedings upon the decision appealed from, but the court may, on application, on notice to the board and on due cause shown, grant a restraining order." This statute, which has been amended, is now Code § 15.2-2314.