## CIRCUIT COURT OF WARREN COUNTY

Curzio Construction, Inc.

v.

Zoning Appeals Board
of the Town of
Front Royal et al.

November 15, 2003

Case No. (Law) 03-171

BY JUDGE JOHN E. WETSEL, JR.

This case came before the Court on November 13, 2003, on an appeal from the Board of Zoning Appeals affirming a decision of the Front Royal Director of Planning requiring that a private residence on a corner lot be oriented so that its "front or main facade" face the front street as required by the zoning ordinance and then issuing a stop work order when construction was begun in violation of the zoning ordinance. Joseph F. Silek, Jr., Esq., and Robert J. Light, Esq., appeared for the Petitioner; and Robert T. Mitchell, Jr., Esq., and Blair D Mitchell, Jr., Esq., appeared for the Respondents.

Evidence was received on the costs incurred by the Petitioner between the time of the issuance of the building permit and the stop work order, and the record was argued. After consideration, the Court has decided to affirm the decision of the Board of Zoning Appeals.

## I. Statement of Material Proceedings

Petitioner owns a lot at the corner of Happy Ridge Drive and Goodview Drive. The lot's shortest frontage is on Happy Ridge Drive, but the lot frontage on Happy Ridge Drive is too short to comply with the lot frontage requirements of the Front Royal Zoning Ordinance.

Because of the lot's small size, the Petitioner applied to the Town Council for a special permit to construct a house on the lot. The Town Zoning and Planning Department reviewed the Petitioner's request for a special permit, and on June 25, 2002, issued a staff memorandum recommending that a special permit be issued to "establish a residential use on a lot having less than 80% of the minimum lot width required in the R-1 District." The staff report further noted that:

> The ordinance requirement for corner lots and the definition of front yards require the orientation of the proposed house to face Happy Ridge Drive (the ordinance deems the shortest frontage to be the front yard). . . .

The Front Royal Town Zoning Ordinance, § 175-18(A) provides that: "Of the two (2) sides of a corner lot, the front shall be deemed to be the shortest of the two (2) sides fronting on streets."

The Town Council approved the special permit on July 8, 2002. At the Town Council meeting on July 8, 2002, the Petitioner's consulting engineer was present and presented the Petitioner's case, and it was expressly noted during the discussion that, absent a variance granted by the Board of Zoning Appeals, the front of any house constructed on the lot would have to face Happy Ridge Drive. The approval was conditioned upon construction of a two-story structure "regardless of whether the dwelling faces Goodview Drive or Happy Ridge Drive."

In a letter to the Petitioner dated September 12, 2002, the Town Zoning Administrator advised the Petitioner that the portion of the Subject Property fronting on Happy Ridge Drive was the "front yard" for purposes of §§ 175-18(A) and 175-15(C) of the Code of the Town of Front Royal. Therefore, the Zoning Administrator stated that unless a variance was granted by the Board of Zoning Appeals, Petitioner was required to orient the front entrance and facade of the proposed house towards Happy Ridge Drive.

On October 28, 2002, Petitioner filed a variance application with the BZA to permit the front of the house to face Good View Drive as opposed to Happy Ridge Drive. On November 18, 2002, the BZA conducted a public hearing on

Petitioner's application, and the BZA voted to deny Petitioner's variance request. This denial was not appealed.

On January 22, 2003, Petitioner submitted a site plan dated January 14, 2003, to the Town Department of Planning and Zoning, along with an application for a zoning permit. This January 14, 2003, site plan indicates that the front facade and entrance of the house fronts Happy Ridge Drive and that a garage and driveway on the side of the house front on Goodview Drive. Based on this site plan, it appears that a "shotgun" type house (the side as opposed to the front is the long axis of the house) was planned as the Petitioner's representative discussed in the November 18, 2003, public hearing.

On January 24, 2003, the Town Director of Planning and Zoning approved Petitioner's zoning permit application. The zoning review does not require a review of the building plans, and the house plans were neither submitted nor reviewed by the Town officials incident to approving the zoning.

On February 3, 2003, Warren County, which supervises all construction in Warren County, including the Town of Front Royal, issued a building permit to Petitioner.

Petitioner then began construction of the residence on the corner lot, and it claims that it incurred expenses of about $44,000 between the time that the building permit was issued and the stop work order was issued.

It is clear, from the modifications made to the structure by flipping the garage and placing an ostensible front door on what is functionally the side of the house, that the Petitioner understood the zoning official's objection to his proposed construction. The house plan on which construction was begun in the spring 2003 was the same as the plan for the house when the Petitioner asked for the variance to permit the house to face Goodview Drive, which variance was refused, except that the garage was flipped to the opposite end of the house, and a door with a small porch was placed on the former garage side of the house to give the ostensible appearance of a front door and sidewalk on the side of the house fronting Happy Ridge Drive.

On April 17, 2003, the Planning Director inspected the property. By letters dated April 17 and April 29, 2003, the Planning Director ordered Petitioner to cease all construction activities on the lot because the entrance porch was located on the basement level and did not enter the main living area of the structure located on Happy Ridge Drive, so the porch, door, and facade facing Happy Ridge Drive did not constitute a "front" or "main" entrance or facade under the Town Code.

On May 16, 2003, Petitioner appealed the Planning Director's interpretation of the Town Code and her stop work order to the BZA. On June

30, 2003, the BZA conducted a public hearing regarding the Planning Director's interpretation of the Town Code, and the BZA affirmed the Planning Director's interpretation and her issuance of the stop work order.

On July 21, 2003, Petitioner filed a timely petition for declaratory judgment and appeal to review the BZA's June 30 decision.

## II. Conclusions of Law

This case comes before Court on an appeal for review of a decision of the Board of Zoning Appeals affirming an administrative decision of the Town Planning Director to enforce compliance with the Town's Zoning Ordinance by issuing a stop work order. Virginia Code § 15.2-2314 governs this appeal, and it provides in pertinent part that:

> In the case of an appeal from the board of zoning appeals to the circuit court of an order, requirement, decision, or determination of a zoning administrator or other administrative officer in the administration or enforcement of any ordinance or provision of state law, the decision of the board of zoning appeals shall be presumed to be correct. *The appealing party may rebut that presumption by proving by a preponderance of the evidence, including the record before the board of zoning appeals, that the board of zoning appeals erred in its decision.* Any party may introduce evidence in the proceedings in the court.

(Emphasis added.)

To err means to make a decision contrary to the law or to make a decision based on a lack of sufficient evidence. The BZA decision comes before the Circuit Court on a writ of certiorari, and the circuit court acts in an appellate capacity to review the record of the BZA proceeding to determine if any legal error has been committed. However, unlike a purely appellate court, by statute the circuit court may take evidence, as was done in this case, if it decides that additional evidence is necessary to fully consider the issues presented on appeal.

As the Supreme Court recently stated in *Herbert v. Suffolk Board of Zoning Appeals*, 266 Va. 137, 142-43 (2003), *quoting Masterson v. Board of Zoning App.*, 233 Va. 37, 44, 353 S.E.2d 727, 732-33 (1987):

> The decision of a board of zoning appeals is presumed to be correct on appeal to a circuit court; the appealing party bears the burden of showing that the board applied erroneous principles of law or that its

decision was plainly wrong and in violation of the purpose and intent of the zoning ordinance. *Board of Zoning App. v. Bond*, 225 Va. 177, 300 S.E.2d 781, 782 (1983); *Allegheny Enterprises v. Covington*, 217 Va. 64, 67, 225 S.E.2d 383, 385 (1976).

The review of a decision of a board of zoning appeals on a petition for writ of certiorari is limited to the scope of the BZA proceeding. An administrative decision which is presumed to be correct can only be reversed or modified if the trial court determines that the BZA decisions was "clearly erroneous or plainly wrong"; the arbitrary or capricious − fairly debatable standard of review applies to legislative actions of the BZA not to administrative actions. *Foster v. Geller*, 248 Va. 563, 566-67, n. 3, 449 S.E.2d 802 (1994) (decided under prior law).

When the Board of Zoning Appeals is reviewing an administrative action of the zoning administrator, this Court's review procedure is different than when it is asked to review the BZA's performance of a legislative function, such as ruling on a special use permit. *See, e.g. Ames v. Painter*, 239 Va. 343, 348, 389 S.E.2d 343 (1990) ("we have consistently held that a board of zoning appeals, exercising its administrative functions in considering a zoning variance, must make certain findings of fact required by statute. If it does not do so, "the parties cannot properly litigate, the circuit court cannot properly adjudicate, and this Court cannot properly review the issues on appeal.")

In this case, the Petitioner objects to the Zoning Administrator's administrative interpretation of Front Royal Ordinance § 175-15(C) which provides that the "main or front building facade and entrance shall be oriented toward the front yard of the property." In *Board of Zoning Appeals v. 852, L.L.C.*, 257 Va. 485, 514 S.E.2d 767 (1999), the landowner challenged the zoning administrator's interpretation of the York County Zoning Ordinance governing the calculation of density credits which determined the amount of developable land. The Supreme Court held that the zoning administrator's interpretation was plainly wrong, and it reviewed the principles governing the assessment of the administrator's interpretation of the zoning ordinance:

> When an ordinance is plain and unambiguous, there is no room for interpretation or construction; the plain meaning and intent of the ordinance must be given it. *Donovan v. Board of Zoning Appeals*, 251 Va. 271, 274, 467 S.E.2d 808, 810 (1996); *McClung v. County of Henrico*, 200 Va. 870, 875, 108 S.E.2d 513, 516 (1959). But, a "decision of a board of zoning appeals is presumed to be correct on appeal to a circuit court; the appealing party bears the burden of

showing that the board applied erroneous principles of law or that its decision was plainly wrong and in violation of the purpose and intent of the zoning ordinance." *Masterson v. Board of Zoning Appeals*, 233 Va. 37, 44, 353 S.E.2d 727, 732-33 (1987). And, a consistent construction of an ordinance by officials charged with its enforcement is given great weight. "Nevertheless, if the administrative interpretation of a portion of an ordinance is so at odds with the plain language used in the ordinance as a whole, such interpretation is plainly wrong, and must be reversed." *Cook v. Board of Zoning Appeals*, 244 Va. 107, 111, 418 S.E.2d 879, 881 (1992).

*Board of Zoning Appeals v. 852, L.L.C.*, 257 Va. 485, 489, 514 S.E.2d 767, 770 (1999). *See also Emporia Bd. of Zoning Apps. v. Mangum*, 263 Va. 38, 41-42 (2003); and *Donovan v. Board of Zoning Appeals of Rockingham County*, 251 Va. 271, 274, 467 S.E.2d 808, 810 (1996).

In this case, the ordinance is clear. The terms "main or front building facade and entrance" are commonly understood architectural terms. It is the design and function of the interior portions of the structure which determine the front of the house, and the "front or main facade" requires an assessment of the architectural finish of the house's exterior. Appellation and minor architectural adornment as was done in this case are not controlling. The "main or front building facade and entrance" of this house clearly face Goodview Drive not Happy Ridge Drive, which is the front of the lot. The Petitioner's flipping of the garage and installing an architectural front door and sidewalk on the side of the house leading into the basement are a clumsy attempt to circumvent the clear provisions of the Zoning Ordinance and the clear instructions of the reviewing officials.

Conditions imposed by a Board of Zoning Appeals must be expressed with sufficient clarity to inform the applicant of the limitations upon the use of his land and to protect nearby land owners. Conditions are effective only when clearly and specifically stated in the record and cannot incorporate by reference statements made by an applicant at the hearing. 83 Am. Jur. 2d, *Zoning and Planning*, § 933 (1992); 3 *American Law of Zoning Variances*, § 20.65 (1996).

In this case, the only condition at issue is the requirement that the residence face Happy Ridge Drive. On October 28, 2002, Petitioner filed a variance application with the BZA to permit the front of the house to face Goodview Drive; so the Petitioner obviously knew what the "front or main facade" of the house was and that the main facade had to face Happy Ridge Drive.

The Town Council had the authority to enact Town Zoning Ordinance §§ 175-15(C) and 175-18(A). Virginia Code § 15.2-2280 provides that a locality, in its zoning ordinance:

> may regulate, restrict, permit, prohibit, and determine the following:
> 1. The use of land, buildings, structures, and other premises for agricultural, industrial, *residential*, flood plain, and other specific uses;
> 2. The size, height, area, bulk, *location*, erection, construction, reconstruction, alteration, repair, maintenance, razing, or removal of structures. . . .

(Emphasis added.)

Section 15.2-2283 states that a permitted purpose of a zoning ordinance may be "to facilitate the creation of a convenient, attractive, and harmonious community." The Town could require houses on lots in residential districts to be oriented on the lot so that the front or main facade faced the street. Therefore, there is no merit to the Petitioner's argument that the Front Royal Zoning Ordinance violates Dillon's Rule.

The Supreme Court of Virginia, in a consistent line of cases from *Board of Supervisors of Fairfax County* v. *Carper*, 200 Va. 653, 107 S.E.2d 390 (1959), through *Board of Supervisors of Fairfax County* v. *Robertson*, 266 Va. 525 (2003), has ruled that localities have wide discretion in the enactment of zoning ordinances, and such ordinance provisions are presumed to be reasonable and valid. As stated in *Carper*, supra:

> The legislative branch of a local government in the exercise of its police power has wide discretion in the enactment and amendment of zoning ordinances. Its action is presumed to be valid so long as it is not unreasonable and arbitrary. The burden of proof is on him who assails it to prove that it is clearly unreasonable, arbitrary, or capricious, and that it bears no reasonable or substantial relation to the public health, safety, morals, or general welfare. The court will not substitute its judgment for that of a legislative body, and, if the reasonableness of a zoning ordinance is fairly debatable, it must be sustained.

(200 Va. at 658.)

The language "the main or front building facade and entrance" used in § 175-15(C) is clear and unambiguous. Where an ordinance does not contain an express definition of a term, the general rule of statutory construction is to

determine the legislature's intent from the plain meaning of the language used. *Hubbard* v. *Henrico Limited Partnership*, 255 Va. 335, 340, 497 S.E.2d 335, 338 (1998). Considering the plain meaning of the words "main or front building facade," the building plans for the proposed dwelling (Exhibit B to the Petitioner's Petition) clearly show that the main building facade and entrance is not oriented toward Happy Ridge Drive.

The lapse of time between the approval of the building permit, the partial completion of the improvements, and issuance of the stop work order does not relieve the landowner of the obligation to comply with the zoning ordinance. *See Segaloff v. City of Newport News*, 209 Va. 259, 163 S.E.2d 135 (1968) (compliance required after completion of improvements). The issuance of the building permit did not create a vested right in the location of the house or its alignment on the lot. The Petitioner has no "vested right" within the purview of Virginia Code § 15.2-2307 which would permit it to orient the "front or main facade" in contravention to the zoning ordinance.

### III. *Decision*

For the foregoing reasons, it is adjudged and ordered that:

1. The BZA's decision affirming the Front Royal Planning Director's order to cease construction of the residence because its "front or main facade" did not face Happy Ridge Drive is affirmed.

2. Petitioner's Declaratory Judgment Action is dismissed with prejudice.