Present:  Hassell, C.J., Keenan, Koontz, Kinser, Lemons, and
Agee, JJ., and Russell, S.J.

BARRY E. SEYMOUR

v.  Record No. 061216     OPINION BY JUSTICE DONALD W. LEMONS
                                        APRIL 20, 2007
CITY OF ALEXANDRIA, ET AL.

FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
John E. Kloch, Judge

In this appeal, we consider whether the trial court's
judgment affirming the disapproval of Barry Edward Seymour's
resubdivision application was plainly wrong or without
evidence to support it.

I.  FACTS AND PROCEEDINGS BELOW

Barry Edward Seymour ("Seymour") owns a lot at 227 North
Latham Street ("Seymour lot") in Alexandria.  The Seymour lot
is zoned for residential use and is 18,801 square feet.  The
Seymour lot is located at the edge of Latham Subdivision and
abuts a private outlet road and a public park.

Seymour filed an application for a preliminary
subdivision plat to divide the property into two residential
lots of 9,323 square feet and 9,478 square feet.  Staff at
the Alexandria Planning Commission ("Planning Commission")
issued a report ("Staff Report") recommending that the
Planning Commission approve the application.  The Staff
Report in part stated:

> The proposed lots will be consistent with
> other lots in the neighborhood in terms of lot

area, width, and configuration.  Residential lot sizes in the area range from 8,000 square feet to over 40,000 square feet, though most lots are in the 8,000 to 9,700 square foot range.  The average size of interior residential lots on Latham Street . . . is 9,977 square feet, and the median size of interior residential lots is 8,086 square feet. . . .  The proposed lot areas of 9,323 and 9,478 square feet and the proposed lot widths of 72 feet are consistent with the sizes of other lots in the area.

Article XI of Alexandria's Zoning Ordinance (the "Ordinance") includes subdivision regulations.  Section 11-1701 of the Ordinance explains that the purpose of the subdivision regulations "is to provide for the orderly division of land for development or transfer of ownership."  The parties agree that section 11-1710(B) of the Ordinance's subdivision regulations is the applicable provision for purposes of this appeal.  When the preliminary subdivision plat application was filed, section 11-1710(B) provided as follows:

No lot shall be resubdivided in such a manner as to detract from the value of adjacent property.  Lots covered by a resubdivision shall be of substantially the same character as to suitability for residential use, areas, street frontage, alignment to streets and restrictions as other land within the subdivision, particularly with respect to similarly situated lots within the adjoining portions of the original subdivision.

Section 2-166 of the Ordinance defines "lot" in pertinent part as "[a] unit of land."  The Ordinance also

2

defines "corner lot" and "interior lot," which are both found in Latham Subdivision. A "corner lot" is a "[a] lot fronting on two or more streets at their intersection." Zoning Ordinance § 2-167. In contrast, an "interior lot" is a "[a] lot with frontage on but one street." Zoning Ordinance § 2-169.

The Planning Commission considered Seymour's resubdivision application at a public hearing. Residents of the Latham Subdivision testified that the resubdivision of the Seymour lot would negatively affect the value of their properties and the character of the neighborhood. Specifically, the residents objected because they did not favor the houses Seymour intended to build on the proposed lots.

One resident testified that she did "not want any [M]c[M]ansions"* and that "the community should have the opportunity for input as to the design of any houses to be built at 227 North Latham so that we avoid [M]c[M]ansions, including written specifics as to height, mass, bulk, lot coverage, and value." Another resident testified that the resubdivision would detract from the value of adjacent properties and that "building two very large houses" on the

_____

* As Seymour notes in his brief, "[t]he word 'McMansion' is usually used in a pejorative sense to refer to houses that some people consider to be too large."

3

resubdivided lots would be "totally incompatible with the neighborhood character." A third resident testified that he did not want construction of big houses in his neighborhood. Finally, a fourth resident testified that building two large houses on the Seymour lot would adversely affect his property value.

Eileen Fogarty ("Fogarty"), the Director of the Department of Planning and Zoning, advised the Planning Commission that, "there is some concern that there is not authority under a subdivision review to dictate issues concerning architecture, site layout, and designs." Fogarty stated that "the term 'lot' in Subsection [11-1710(B)] refers to really the use of the land, and not so much the design of the structures that are built on the property."

The Planning Commission denied Seymour's application because it

> determined that the provisions of Section 11-
> 1710(B) of the zoning ordinance were not being
> met, that the subdivision would not be
> compatible with surrounding properties. They
> also had concerns that the subdivision
> represented property speculation that would
> result in detrimental changes to the character
> of the surrounding neighborhood.

Seymour appealed the Planning Commission's decision to the Alexandria City Council ("City Council"). Commissioner H. Stewart Dunn, Jr. ("Commissioner Dunn"), told the City Council that the Seymour lot was a corner lot and that "to

4

allow a subdivision here would change the character of the existing subdivision."  Commissioner Dunn explained that if Seymour "is permitted to build homes on these sites," then the "neighborhood is going to be dramatically and significantly changed."  Commissioner Dunn also stated that if the application was approved, the resubdivision would detract from the value of the adjacent properties.  The City Council upheld the Planning Commission's decision.

Seymour appealed the disapproval of the preliminary subdivision plat to the circuit court pursuant to Code § 15.2-2260.  In an interrogatory answer, the City of Alexandria ("the City") stated:

> The requirement in section 11-1710(B) that "[n]o lot shall be resubdivided in such a manner as to detract from the value of adjacent property" cannot be given full effect unless one considers improvement of the land. The division of land into lots is a purely legal construct that, by itself, can have no effect on the value of anything.  It is only when one considers how those lots will be improved – based on the zoning of the property – that an assessment of its impact on the value of adjacent property has any meaning.

(Emphasis added.)  The Honorable Lisa B. Kemler ("Judge Kemler") subsequently granted Seymour's motion for partial summary judgment.  In doing so, the trial court ruled that the Ordinance was invalid to the extent that the City interpreted it to permit consideration of the improvements to be constructed on resubdivided lots.

5

Prior to trial, the parties stipulated that the Seymour lot was not a corner lot under the City's zoning ordinance provisions. Section 2-100 of the Ordinance expressly states that the definitions, including that of a "corner lot" or an "interior lot," apply to the entire Ordinance which includes both zoning and subdivision provisions.

At trial, Richard Josephson ("Josephson"), Deputy Director for the Office of Planning and Zoning for the City of Alexandria, testified that "under the zoning ordinance, [the Seymour lot] is by definition an interior lot." Significantly, Josephson assisted in the preparation of the Staff Report, which concluded that the proposed subdivision of the Seymour lot was consistent with other interior lots in the subdivision. Nevertheless, Josephson testified that "from a perspective of form and function," he considers the Seymour lot a corner lot, even though it "technically doesn't meet the zoning definition of a corner lot." Josephson explained that "subdividing [the Seymour] lot into two lots would substantially change [its] character . . . [a]nd it would create two lots that would be more analogous to interior lots within the subdivision. And based on its location, it really isn't an interior lot. Or it shouldn't be characterized as an interior lot."

6

At trial, joint exhibits 11 and 12 were introduced. Joint exhibit 11, a list of interior lot sizes and addresses prepared by the City, identified 227 North Latham Street, the Seymour lot, as an interior lot in the Latham Subdivision. Additionally, joint exhibit 10, a list of corner lot sizes and addresses prepared by the City, did not include the Seymour lot.

The trial court affirmed the Planning Commission and the City Council's disapproval of Seymour's resubdivision application. At trial, the Honorable John E. Kloch held that the Planning Commission and the City Council were entitled to exercise discretion in the interpretation and application of section 11-1710 of the Ordinance and that whether Seymour's lot was a corner lot was not dispositive of the issue of subdivision.

Seymour filed a timely notice of appeal to this Court. We granted Seymour's petition for appeal on five assignments of error.

1.  The trial court erred in ruling that the City and the trial court were not bound by the definitions in the City Ordinance of interior lots and corner lots when determining if Seymour's proposed Lot 501 was similarly situated to corner lots as opposed to determining if it was similarly situated to interior lots.

2.  The trial court erred in failing to rule that Seymour's proposed Lot 501 was not similarly situated to corner lots, and therefore was not required by the

7

City Ordinance to be of substantially the same character as corner lots.

3. The trial court erred in ruling that the City had discretion to ignore the plain meaning of the City Ordinance when determining if Seymour's proposed subdivision satisfied the criteria of the City's Ordinance for subdivision.

4. The trial court erred in ruling that the disapproval of Seymour's subdivision application was not based on his refusal to permit the City to design his proposed houses.

5. The trial court erred in ruling that the disapproval of Seymour's subdivision application was not arbitrary and capricious.

Additionally, there is one assignment of cross-error by the City: "The trial court erred in granting partial summary judgment to the appellant, ruling that improvements could not form the basis on which a resubdivision application would be denied."

## II. ANALYSIS

### A. Standard of Review

We recently set forth the standard of review for subdivision applications:

> When a local governing body's decision regarding an application for approval of a preliminary subdivision plat is appealed, a trial court must sustain the decision unless the local governing body failed to comply with the applicable subdivision ordinances or acted arbitrarily and capriciously in denying the application. Code § 15.2-2260(E); Hanover County v. Bertozzi, 256 Va. 350, 355, 504 S.E.2d 618, 620 (1998). On appellate review, the trial court's judgment is presumed correct and will not be set aside unless the judgment

8

> is plainly wrong or unsupported by the
> evidence. Ravenwood Towers, Inc. v. Woodyard,
> 244 Va. 51, 57, 419 S.E.2d 627, 630 (1992).

Board of Supervisors v. Greengael, L.L.C., 271 Va. 266, 277, 626 S.E.2d 357, 363 (2006).

### B. The trial court did not err in granting partial summary judgment to Seymour.

At a pretrial hearing, Judge Kemler granted partial summary judgment to Seymour because the trial court held pursuant to section 11-1710(B) that the City could not consider improvements when considering subdivision applications. The trial court was correct in its analysis.

Section 9.24 of the City's Charter confers on the City

> the power to adopt resolutions relative to the
> subdivision of land in the manner hereinafter
> provided. Such regulations may prescribe
> standards and requirements for the subdivision
> of land which may include but shall not be
> limited to the following: Location, size and
> layout of lots so as to prevent congestion of
> population and to provide for light and air;
> . . . adequate open spaces; adequate and
> convenient facilities for vehicular parking;
> . . . planting of shade trees and shrubs
> . . . .

Consistent with this section of the City's Charter, section 11-1701 of the Ordinance explains that the purpose of subdivision regulations "is to provide for the orderly division of land for development or transfer of ownership."

We have stated that: "[T]he words of the ordinance are to be given their plain and natural meaning. The purpose and

9

intent of the ordinance should be considered but the ordinance should not be extended by interpretation or construction beyond its intended purpose." Higgs v. Kirkbride, 258 Va. 567, 573, 522 S.E.2d 861, 864 (1999) (quotation omitted). Pursuant to section 9.24 of the City Charter, sections 11-1701 and 11-1710(B) of the Ordinance involve the division of land and do not concern building and zoning specifications. The trial court properly distinguished zoning and subdivision regulations based on the power authorized under the City's Charter. Fogarty, the Director of the Department of Planning and Zoning, correctly advised the Planning Commission that "the term 'lot' in Subsection 11-1710(B) [sic] refers to really the use of the land, and not so much the design of the structures that are built on the property." Accordingly, we hold that Judge Kemler correctly ruled that the City could not consider the anticipated improvements on Seymour's proposed lots when considering Seymour's resubdivision application. See also Board of Supervisors v. Countryside Inv. Co., 258 Va. 497, 504-05, 522 S.E.2d 610, 613-14 (1999) (holding that the local government could not deny a subdivision based on zoning considerations).

      C. The trial court erred in affirming the disapproval of Seymour's resubdivision application.

At all times relevant to the underlying proceedings, section 11-1710(B) of the Ordinance provided:

> No lot shall be resubdivided in such a manner as to detract from the value of adjacent property. Lots covered by a resubdivision shall be of substantially the same character as to suitability for residential use, areas, street frontage, alignment to streets and restrictions as other land within the subdivision, particularly with respect to similarly situated lots within the adjoining portions of the original subdivision.

(Emphasis added.)

Section 11-1710(B) prohibits the approval of a subdivision that will "detract from the value of adjacent property." The City conceded in an interrogatory answer that "[t]he division of land into lots is a purely legal construct that, by itself, can have no effect on the value of anything." Therefore, the Planning Commission erred in denying Seymour's resubdivision application on the basis that, as the City explained in answering an interrogatory, "the Commission was not satisfied that the lots, as improved, would be compatible with the . . . value of the adjacent lots." (Emphasis added.)

Section 11-1710(B) also requires that the proposed lots must be of "substantially the same character" as other "similarly situated" lots within the subdivision before a resubdivision application will be granted. Section 11-1710(B) explains that "suitability for residential use,

11

areas, street frontage, alignment to streets and restrictions as other land within the subdivision" are considered when determining whether the proposed lots are of "substantially the same character." Whether the Seymour lot is a corner or interior lot is relevant to this appeal because the terms relate to street frontage and alignment to streets and whether a lot is of substantially the same character to other lots within the subdivision.

The City conceded on several occasions that the Seymour lot was not a corner lot. First, the Staff Report concluded that the proposed subdivision of the Seymour lot was consistent with other interior lots in the Latham Subdivision. Second, prior to trial, the parties stipulated that the Seymour lot was not a corner lot under the City's zoning ordinance provisions. Third, Josephson, Deputy Director for the Office of Planning and Zoning for the City, testified at trial the Seymour lot was an interior lot pursuant to the zoning ordinance. Finally, joint exhibit 11, a list of interior lot sizes and addresses prepared by the City, identified 227 North Latham Street, the Seymour lot, as an interior lot in the Latham Subdivision. In contrast, joint exhibit 10, a list of corner lot sizes and addresses prepared by the City, did not include the Seymour lot.

Consequently, for purposes of this appeal, the Seymour lot is an interior lot rather than a corner lot.

Because the definitions of a corner lot and an interior lot are mutually exclusive, a corner lot and an interior lot cannot be "similarly situated." Therefore, Seymour's interior lot and the corner lots in the Latham subdivision are not "similarly situated."

The Staff Report recommended that the Planning Commission approve the application because the "[t]he proposed lots will be consistent with other [interior] lots in the neighborhood in terms of lot area, width, and configuration." No evidence was presented to the contrary.

We hold that the trial court's decision affirming the Planning Commission's disapproval of Seymour's resubdivision application was plainly wrong and without evidence to support it. Because the disapproval was not proper under section 11-1710(B) of the Ordinance, the trial court's decision was erroneous.

### III. CONCLUSION

For the reasons stated above, the judgment of the trial court granting Seymour partial summary judgment will be affirmed. The judgment of the trial court affirming the Planning Commission's disapproval of Seymour's resubdivision

13

application will be reversed.  The case will be remanded for entry of an order consistent with this opinion.

<u>Affirmed in part,</u>
<u>reversed in part,</u>
<u>and remanded</u>.